1   DAVID GROSSMAN (SBN 211326)
    dgrossman@loeb.com
2   ROBERT J. CATALANO (SBN 240654)
    rcatalano@loeb.com
3   LOEB & LOEB LLP
    10100 Santa Monica Boulevard, Suite 2200
4   Los Angeles, California 90067-4120
    Telephone: 310-282-2000
5   Facsimile: 310-282-2200

6   JONATHAN ZAVIN (Admitted *pro hac vice*)
    jzavin@loeb.com
7   LOEB & LOEB LLP
    345 Park Avenue
8   New York, New York 10154-1895
    Telephone: 212-407-4000
9   Facsimile: 212-407-4990

10   Attorneys for Defendants

11

12             UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15   PAULA PETRELLA, an individual   )   Case No. CV 09-0072 GW (MANx)
                              )
16           Plaintiff,           )   Assigned to the Hon. George H. Wu
                              )
17       v.                     )
                              )
18   METRO-GOLDWYN-MAYER, INC.,  )   **MEMORANDUM OF POINTS AND**
    a corporation; METRO-GOLDWYN-   )   **AUTHORITIES IN SUPPORT OF**
19   MAYER STUDIOS, INC., a        )   **DEFENDANTS' MOTION FOR**
    corporation; METRO-GOLDWYN-    )   **SUMMARY JUDGMENT**
20   MAYER HOME ENTERTAINMENT,  )
    LLC, a limited liability company;    )   [Notice of Motion and Motion for
21   METRO-GOLDWYN-MAYER HOME  )   Summary Judgment; Declaration of
    ENTERTAINMENT DISTRIBUTION  )   Edward Slizewski; Declaration of David
22   CORPORATION, a corporation;     )   Grossman; Separate Statement of
    UNITED ARTISTS CORPORATION, a )   Uncontroverted Facts and Conclusions
23   corporation; 20TH CENTURY FOX  )   of Law; [Proposed] Judgment filed
    HOME ENTERTAINMENT, LLC, a   )   concurrently herewith]
24   limited liability company; and DOES 1 )
    THROUGH 10, inclusive         )   Date: October 22, 2009
25                              )   Time: 8:30 a.m.
          Defendants.         )   Courtroom: 10
26                               )
27   _____)

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF FACTS ...................................................................4

III.  ARGUMENT ......................................................................................7

    A.   PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGMENT.................................................................................8

        1.   Plaintiff's Copyright Claim Is Baseless Because Plaintiff Failed To Timely Renew The Copyrights In The Book And The 1973 Screenplay And, Therefore, Cannot Prevent Defendants From Continuing To Exploit A Derivative Work Using Elements From Those Literary Works ......................................8

        2.   Defendants Were Given Motion Picture Rights By The Co-Owner Of The Book And, Therefore, The Law Is Clear That Plaintiff Cannot Sue Defendants For Infringement....................................................................11

        3.   There Is No Substantial Similarity Of Protectable Expression Between The Film And The Literary Works .................................................................................13

    B.   PLAINTIFF'S CLAIMS ARE BARRED BY LACHES. .................19

        1.   Plaintiff Delayed Eighteen Years Before Filing The Present Suit.............................................................................20

        2.   Defendants Will Suffer Expectations-Based Prejudice.................................................................................21

    C.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS PREEMPTED BY THE COPYRIGHT ACT. ...................................23

    D.   A CO-OWNER CANNOT SUE AN AUTHORIZED LICENSEE FOR AN ACCOUNTING. ..........................................24

IV.  CONCLUSION ................................................................................25

i

1
2

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

3

CASES

4
5
Anderson v. Liberty Lobby,
477 U.S. 242 (1986)...........................................................................................7

6
7
Arica Inst., Inc. v. Palmer,
970 F.2d 1067 (2d Cir. 1992)...........................................................................17

8
Benay v. Warner Bros. Ent., et al.,
No. 2:05-CV 08508 PSG (C.D. Cal. 2008) ................................................. 15-16

9
10
Berkic v. Crichton,
761 F.2d 1289 (9th Cir. 1985)...................................................................10, 14

11
12
Cano v. A World of Difference Inst.,
1996 WL 371064 (N.D. Cal. 1996)...................................................................14

13
14
Danjaq LLC v. Sony Corp., et al.,
263 F.3d 942 (9th Cir. 2001)..................................................................... 19-21

15
16
Davis v. Blige,
505 F.3d 90 (2d Cir. 2007).......................................................................12, 24

17
18
Del Madera Properties v. Rhodes,
820 F.2d 973 (9th Cir. 1987)..................................................................... 23-24

19
20
Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,
140 F.2d 266 (2d Cir. 1944)............................................................................12

21
Firoozye v. Earthlink Network,
153 F. Supp.2d 1115 (N.D. Cal. 2001)............................................................24

22
23
Fogerty v. Fantasy,
510 U.S. 517 (1994).......................................................................................23

24
25
Funky Films, Inc. v. Time Warner Entm't Co.,
462 F.3d 1072 (9th Cir. 2006)........................................................................13

26
27
Grosso v. Miramax Film Corp.,
383 F.3d 965 (9th Cir. 2004)..........................................................................19

28

**Page(s)**

Hoehling v. Universal City Studios, Inc.,
   618 F.2d 972 (2d Cir. 1980)...................................................................... 14-16

Jackson v. Axton,
   25 F.3d 884 (9th Cir. 1994)............................................................................22

Jesinger v. Nevada Fed. Credit Union,
   24 F.3d 1127 (9th Cir. 1994)............................................................................7

Kepner-Tregoe, Inc. v. Executive Development, Inc.,
   79 F. Supp. 2d 474 (D. N.J. 1999)..................................................................20

Kling v. Hallmark Cards, Inc.,
   225 F.3d 1030 (9th Cir. 2000)........................................................................19

Kodadek v. MTV Networks, Inc.,
   152 F.3d 1209 (9th Cir. 1998)........................................................................23

Kouf v. Walt Disney Pictures and Television,
   16 F.3d 1042 (9th Cir. 1994)...................................................................... 13-14

Mappa Music Co. v. Universal-Polygram Int'l Pub.,
   62 U.S.P.Q.2d 1582 (C.D. Cal. 2002) .............................................................22

McKay v. Columbia Broad. Sys. Inc.,
   324 F.2d 762 (2d Cir. 1963)............................................................................24

Meredith v. Smith,
   145 F.2d 620 (9th Cir. 1944)..........................................................................12

Metcalf v. Bochco,
   294 F.3d 1069 (9th Cir. 2002)................................................................14, 16

Miller Music Corp. v. Charles N. Daniels, Inc.,
   362 U.S. 373 (1960)........................................................................................11

Miller v. Universal City Studios, Inc.,
   650 F.2d 1365 (5th Cir. 1981)........................................................................14

Narell v. Freeman,
   872 F.2d 907 (9th Cir. 1989)....................................................................14, 16

iii

**Page(s)**

Novak v. Warner Bros. Pictures LLC, et al.,
   No. 2:07-CV 07-4000 GAF (C.D. Cal. 2008) ..................................................16

Piantadosi v. Loew's Inc.,
   137 F.2d 534 (9th Cir. 1943)......................................................................13, 24

Shaw v. Lindheim,
   919 F.2d 1353 (9th Cir. 1990)....................................................................14, 17

Stewart v. Abend,
   495 U.S. 207 (1990)............................................................................5, 11, 20

Sybersound Records, Inc. v. UAV Corp.,
   517 F.3d 1137 (9th Cir. 2008)..........................................................................12

Walker v. Time Life Films, Inc.,
   784 F.2d 44 (2d Cir. 1986)................................................................................10

Xerox Corp. v. Apple Computer, Inc.,
   734 F. Supp. 1542 (N.D. Cal. 1990)................................................................24

**STATUTES**

17 U.S.C. § 201(a) .................................................................................................9

17 U.S.C. § 301(a) ...............................................................................................23

17 U.S.C. §304(a)(4)(A) ........................................................................................8

Copyright Act of 1909 .........................................................................................11

Copyright Act, § 106 ...........................................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ..............................................................................................7

Fed. R. Civ. P. 56(e) ..............................................................................................7

Nimmer, § 6.10[A], 2008.....................................................................................13

Nimmer, § 6.12[C][3] ..........................................................................................24

Nimmer, § 9.06[F], 2008 .......................................................................................9

iv

## I.    INTRODUCTION

Nearly twenty years after Plaintiff first engaged legal counsel with respect to her alleged rights in the 1980 motion picture "Raging Bull" (the "Film") and over a decade after Defendants expressly rejected her claims and continued to invest millions of dollars and substantial resources arranging their affairs around their exclusive ownership of the Film, Plaintiff Paula Petrella has sued Defendants for copyright infringement, unjust enrichment and an accounting with respect to the Film.  Plaintiff's father was a co-author, with Jake LaMotta, of certain literary works regarding the life of Jake LaMotta, the world champion boxer who was the subject of the Film.  Plaintiff's father, along with LaMotta himself, granted Defendants' predecessor-in-interest motion picture rights in two motion picture screenplays (the "1963 Screenplay" and the "1973 Screenplay") and one jointly-authored book (the "Book") (collectively the "Literary Works") about LaMotta's life and boxing career. In addition to the unjustifiable delay of almost two decades in bringing these claims, there is no legal or factual basis for any of the claims asserted against Defendants, and this suit should be dismissed as a matter of law.

Plaintiff's copyright infringement claim is both legally and factually baseless for a number of independent reasons.  First, Plaintiff's failure to timely renew the copyright in the Book and the 1973 Screenplay prohibits her from claiming that Defendants cannot continue to exploit a derivative work based on them.  Because the Literary Works were copyrighted prior to 1978, the Copyright Act provides that the three Literary Works each had an initial copyright term of twenty eight years.  If an author dies within the original term of copyright, there is a "renewal term" that vests in the author's heirs.  However, if the author's heirs do not timely file a renewal registration within one year of the expiration of the original twenty eight year term, any authorized derivative works created during the initial term may continue to be distributed and the heirs have no rights with respect to such

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

authorized derivative works.  In this case, it is undisputed that Plaintiff did not file timely renewal registrations for the Book or the 1973 Screenplay.  Even if the Film used protected copyrighted material from the Literary Works (and it did not), Defendants retain the right to exploit the Film without any obligation to Plaintiff because no timely renewal registrations were filed with respect to either the Book or the 1973 Screenplay.  The fact that Plaintiff timely filed a renewal registration for the 1963 Screenplay is immaterial because the three Literary Works are virtually indistinguishable from one another.  Therefore, by operation of law (law which is clear and unambiguous), Defendants retain all rights to use copyrighted elements from the Book and the 1973 Screenplay in the Film and Plaintiff's belated copyright claim is baseless.

Second, Defendants cannot be sued for copyright infringement by Plaintiff, because Jake LaMotta, as the co-author of the Book which Plaintiff alleges is the basis for the Film, granted Defendants' predecessor-in-interest the right to create a motion picture based on his autobiography.  Defendants were expressly authorized, by LaMotta's grant of rights, to use the Book and clear and unambiguous Ninth Circuit precedent holds that a valid license from a co-author precludes a suit for infringement by another co-author.  Petrella and LaMotta themselves expressly stated that the two Screenplays were "based on the [Book]," and represented and warranted that the book was original and not based on any other work, and that the screenplays were adapted from the Book.  The right to use the elements in the Book is the same as receiving the right to use those identical elements from the other Literary Works.  Because LaMotta indisputably granted those rights to Defendants' predecessor, Plaintiff cannot sue Defendants for copyright infringement.  A copyright claim such as this by a co-author against an authorized licensee is baseless.

Third, it is clear from examining the works at issue that there is no substantial similarity of any ***protectable expression*** between the Literary Works and the Film.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

The only similarities between the works stem from the commonalities that arise from an historical story about the life of legendary boxer, Jake LaMotta – and the facts and circumstances surrounding LaMotta's life are simply not protectable. Without similarity of protectable expression, a copyright claim must be dismissed.

Finally, Plaintiff's clear, knowing and unreasonable delay in bringing this lawsuit *18 years after she knew a claim could have been made*, renders this claim barred by the doctrine of laches. Plaintiff herself has admitted that she engaged counsel nearly twenty years ago – with respect to the very same claims that she is asserting in this lawsuit. Plaintiff has no rational excuse for this extraordinary delay. In a case involving a belated claim made with respect to the plaintiff's alleged rights in various motion pictures, the Ninth Circuit held that a nearly identical period of delay (19 years) bars any claim for relief. Thus, Plaintiff's claims are barred by laches and must be dismissed.

Plaintiff has also alleged state-law claims for "unjust enrichment" and "accounting." Plaintiff's claim for unjust enrichment fails based on the clear and well-recognized doctrine of copyright preemption. Innumerable decisions in this circuit have held that claims for unjust enrichment are deemed to be preempted by federal copyright law and, therefore, there is no basis for Plaintiff's unjust enrichment claim. Plaintiff's "accounting" claim is based on the theory that Defendants and Plaintiff are co-owners of the Book and that Defendants have a duty to "account" to Plaintiff for exploitation of the Film, as a derivative work of the Book. First, because the Defendants have the absolute right to use the Book, they do not have to account to anyone. Second, clear Ninth Circuit precedent also bars this claim as a matter of law. Plaintiff's father and LaMotta are co-authors of the Book and co-authors have a duty to account to one another for proceeds obtained from the exploitation of a joint work. Defendants have a non-exclusive license to use the Book and are not obligated to provide an accounting to Plaintiff. If Plaintiff seeks an accounting, she must proceed against the existing co-author of the Book,

1  Jake LaMotta.  In sum, all of Plaintiff's claims are baseless, there are no genuine

2  issues of material fact, and these claims must be dismissed as a matter of law.

3  **II.     STATEMENT OF FACTS**

4        After Jake LaMotta retired from boxing, he collaborated with his long-time

5  friend, Frank Peter Petrella ("Petrella," and referred to alternatively herein as "Peter

6  Petrella") to write a book about LaMotta's life as a champion boxer (the "Book").

7  See First Amended Complaint ("FAC") at ¶ 17; Uncontroverted Material Fact

8  ("UMF") 1.  Petrella and LaMotta jointly registered a copyright for the Book in July

9  1970.  Id. at ¶¶ 17, 18; UMF 2.  Petrella, in collaboration with LaMotta, also wrote a

10  screenplay based on the Book in 1963 (the "1963 Screenplay").  UMF 3.  Petrella

11  registered a copyright for the 1963 Screenplay with the United States Copyright

12  Office on October 9, 1963.[1]  Id. at ¶ 15; UMF 4.  Petrella wrote a second

13  screenplay, also based on the Book, in 1973 (the "1973 Screenplay"), and registered

14  a copyright in and to the 1973 Screenplay with the Copyright Office in July 1973.

15  Id. at ¶¶ 19, 20; UMF 6.

16        Pursuant to a written agreement dated November 19, 1976, Petrella and

17  LaMotta assigned their respective motion picture rights, titles and interests in the

18  Book, the 1963 Screenplay and the 1973 Screenplay to Chartoff-Winkler

19  _____

20        [1] The dates of the copyright registration of the "1963 Screenplay" and the
21  Book are irrelevant as to which was based on which, or which was written first.
   There is uncontrovertable evidence that the Book was written first.  In the 1976
22  Agreement assigning the motion picture rights in the Book and the Screenplays,
23  Petrella and LaMotta specifically represented and warranted that the Book was
   original and not based on any other works, while representing and warranting that
24  the Screenplays were not copied or adapted from any work "other than the
25  Published Work" [the Book].  Petrella and LaMotta also expressly stated that the
   Screenplays were "based on" the Book.  Thus the authors unequivocally stated that
26  the Book was written before the 1963 Screenplay, and Plaintiff has no evidence to
27  the contrary.  Further, though Petrella registered the copyright for the 1963
   Screenplay solely in his name, the work itself states that it was written "in
28  collaboration with Jake LaMotta."

1  Productions, Inc. ("CWP") for the purposes of developing a motion picture based on

2  those works.  UMF 7.  In or about September 1978, United Artists Corporation

3  ("UA") acquired the motion picture rights to "Raging Bull" (the "Film") pursuant to

4  a written assignment from CWP.  UMF 12.  UA registered a copyright in and to the

5  Film in or about September 1980.  UMF 14.  In November of 1980, UA released the

6  Film starring Robert DeNiro and directed by Martin Scorsese.

7      According to the Complaint, Petrella died in December 1981, during the

8  original 28-year term of the copyrights for the Literary Works.  UMF 15.  At the

9  time of his death, Petrella was survived by his wife, his son, and his daughter

10  (Plaintiff).  UMF 16.  Petrella's renewal rights in the Literary Works passed to these

11  three statutory heirs after the expiration of the original term of each copyright (for

12  example, the 1963 Screenplay passed to his heirs in 1991.)  UMF 17.  Plaintiff's

13  mother died in 2005 and shortly thereafter, Plaintiff's brother transferred his rights,

14  if any, in the Literary Works to Plaintiff.  UMF 18.  Therefore, Plaintiff alleges that

15  she is now the sole owner of the Petrella interest in the three Literary Works, subject

16  to LaMotta's interests as a joint author.  UMF 19.

17      Plaintiff has worked in the television and motion picture industry in New

18  York and Los Angeles for nearly twenty years.  UMF 20.  In 1990 Plaintiff read

19  about the U.S. Supreme Court decision of Stewart v. Abend (addressing renewal

20  rights of statutory heirs under the Copyright Act) and promptly engaged an

21  entertainment attorney, Lawrence Shire, to assist her in pursuing a copyright

22  infringement claim against Defendants with respect to the Film.  UMF 21.  In 1991,

23  Plaintiff's attorney filed a renewal registration for the 1963 Screenplay.  UMF 22.

24  However, Plaintiff did not make any claims against Defendants at that time and, in

25  fact, intentionally decided not to pursue litigation at that time because she believed

26  that the Film had not yet made a profit. UMF 23.

27      In or around September of 1998, Mr. Shire's firm finally contacted MGM (a

28  fact known by Plaintiff's current counsel) concerning Defendants' exploitation of

1    the Film and the impact of this exploitation on Plaintiff's purported rights.  UMF 24.

2    At that time, MGM rejected Plaintiff's claim and explained that MGM was granted

3    the right to exploit the Book by LaMotta (and an authorized licensee cannot be sued

4    for copyright infringement – even if only one joint author licensed use of the work.)

5    Plaintiff was also advised at that time that no protectable elements from the Literary

6    Works were used in the Film.  UMF 25.  Following these communications, Plaintiff

7    went silent and did not take any legal action until 2009 – eighteen years after

8    Plaintiff's alleged claim first accrued and eleven years after Defendants expressly

9    rejected it.  Plaintiff was absolutely aware of her claims for all of this time, and yet

10    consciously decided not to file a lawsuit until 2009. UMF 26.

11       In the interim, Defendants have openly distributed and otherwise exploited

12    the Film through various media.  UMF 28.  Defendants have continued, throughout

13    this time, to expend substantial resources and millions of dollars on promoting,

14    advertising and distributing the Film.  UMF 29.  Defendants' investment in the Film

15    is consistent with that of a party who desires to build and maintain continued public

16    awareness and goodwill associated with intellectual property it believes it will

17    continue to own, including the millions of dollars that were spent on the 25th

18    Anniversary Edition of the Film which was released in 2005.  UMF 45.

19       Further, according to Plaintiff's testimony, LaMotta himself is now unlikely

20    to be able to testify.[2]  UMF 30.  LaMotta is almost 90 years old and Plaintiff

21

22       [2] Had he been competent to testify, LaMotta could have been a relevant

23    witness in this case.  Plaintiff asserts that, unlike the jointly-authored book, the 1963 Screenplay was solely authored by her father, Peter Petrella.  However, the 1963

24    Screenplay clearly states on its cover page that it was drafted "in collaboration with Jake LaMotta" and it is undisputed that the 1963 Screenplay details the same

25    personal events from LaMotta's life that he himself included in his published

26    autobiography.  Also, Plaintiff alleges that the Book and the 1973 Screenplay are "derivative works" of the 1963 Screenplay, but the only evidence on this point

27    demonstrates that both LaMotta and Petrella represented and warranted that the two

28    screenplays were "based on" the Book.  Finally, to the extent the incidents, dialogue

1  testified that, although she has met LaMotta hundreds of time in her life, the last

2  time she saw him, he no longer recognized her.  UMF 31.  The inexcusable passage

3  of time has impaired Defendants' ability to obtain evidence and has also prejudiced

4  Defendants, who have arranged their business affairs for years by licensing and

5  distributing the Film.

6  **III.    ARGUMENT**

7          Fed. R. Civ. P. 56(a) provides:  "A party seeking to recover upon a claim …

8  may, at any time, after the expiration of 20 days from the commencement of the

9  action … move with or without supporting affidavits for a summary judgment in the

10 party's favor upon all or any part thereof."  "When a motion for summary judgment

11 "is made and supported [by affidavits] as provided in this rule, an adverse party may

12 not rest upon the mere allegations or denials of the adverse party's pleading, but the

13 adverse party's response, by affidavit or as otherwise provided in this rule, must set

14 forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

15 56(e).  The court need only consider "whether there are any genuine issues of

16 material fact…"  <u>Jesinger v. Nevada Fed. Credit Union</u>, 24 F.3d 1127, 1130 (9th

17 Cir. 1994) (emphasis added).  Facts are "material" to a motion for summary

18 judgment if a dispute over them "might affect the outcome of the suit under the

19 governing law."  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

20         The issues of non-infringement, laches and pre-emption are clear and do not

21 present any material issues of fact which need to be resolved by a trier of fact.

22 Defendants respectfully request that the Court dismiss Plaintiff's claims in their

23 entirety.

24

25

26 _____

27 and characters included in the literary works are simply historical facts from
   LaMotta's life (and therefore not copyrightable), his testimony on these points

28 would have been relevant and further dispositive of all of Plaintiff's claims.

**A.    PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGMENT.**

     **1.    Plaintiff's Copyright Claim Is Baseless Because Plaintiff Failed To Timely Renew The Copyrights In The Book And The 1973 Screenplay And, Therefore, Cannot Prevent Defendants From Continuing To Exploit A Derivative Work Using Elements From Those Literary Works.**

     The Copyright Act provides that, to prevent continued exploitation of derivative works created during the original copyright term, a renewal claimant must file a renewal application within one year prior to the expiration of the initial 28-year term.  17 U.S.C. §304(a)(4)(A).  There are no exceptions to this rule.  With respect to the Book and the 1973 Screenplay, whose initial 28-year terms expired in 1998 and 2001, respectively, Plaintiff did not file renewal applications until December of 2008.[3]  There is no dispute that these renewal applications were untimely, and the Copyright Act is unambiguous as to the effect of Plaintiff's failure to timely file renewal applications:

> If an application to register a claim to the renewed and extended term of copyright in a work is not made within 1 year before the expiration of the original term of copyright in a work…then **a derivative work prepared under authority of a grant of a transfer or license of the copyright that is made before the expiration of the original term of copyright may continue to be used** under the terms of the grant during the renewed and extended term of copyright without infringing the copyright…. (emphasis added)

17 U.S.C. § 304(a)(4)(A). ).  In other words, if an author licenses use of his work (for example, a screenplay) and the licensee creates a derivative work (a film) based

---

[3] The term of the copyright runs from when the work is first published or registered, not from when it was written, so the date of registration is not probative in any way of when any of these works were first written.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

on that screenplay, unless the author's heirs file a timely renewal notice with regard to the screenplay, the film's creators retain the right to distribute the film throughout the renewal copyright term of the screenplay, without any obligation to the author's heirs.– See Nimmer, § 9.06[F], 2008 ("the renewal claimant – usually the widow, widower, or children of the deceased author – must timely file a renewal application for the underlying" pre-1978 work in order to restrict exploitation of the derivative work).  In this case, the failure to timely file renewal applications for the Book and the 1973 Screenplay precludes Plaintiff from filing a claim for copyright infringement with respect to use of any elements in those works in the Film.  By operation of law, Defendants remain authorized to distribute the Film (even assuming the Film is deemed to be derivative of either of the Literary Works).

The fact that Plaintiff filed a timely renewal application for the 1963 Screenplay is immaterial because the Book, the 1963 Screenplay and the 1973 Screenplay are virtually indistinguishable from one another.[4]  Therefore, the right to use the elements included in the Book and the 1973 Screenplay is the same as to the right to use the identical elements contained in the 1963 Screenplay.  Indeed, Plaintiff identifies dozens of allegedly "copyrightable" elements that are included in all three Literary Works.  UMF 32.  However, there are only four allegedly copyrightable elements common to the Film and the 1963 Screenplay that,

---

[4] As stated above, there is further uncontrovertable evidence that the 1963 Screenplay was based on the later registered, but obviously earlier written, Book.  There is no genuine issue of material fact on this point, since both writers represented and warranted this to be the case, and Plaintiff has no evidence to the contrary.  However, even if this were not the case, and the 1963 Screenplay were written first, this would be irrelevant.  The Book was a joint work by Petrella and LaMotta.  Petrella's contribution to this joint work is jointly owned by Petrella and LaMotta.  17 U.S.C. § 201(a) ("authors of a joint work are co-owners of copyright in the work.").  This is a contribution to a joint work, not a grant that can be terminated by Petrella, or Petrella's heirs.  There is simply no authority whatsoever, under Abend or otherwise, that a contribution to a joint work can be terminated by an author or the author's heirs.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

according to Plaintiff, do not exist in either the Book or the 1973 Screenplay. Those allegedly copyrightable elements are: "use of fight vignettes and vignettes of Jake's personal life"; "use of sound or pictures from actual fights"; "popping camera flashbulbs"; and the fact that a commentator at one of LaMotta's fights said that he was "playing possum." UMF 33.

These allegedly common "elements" are not copyrightable by any stretch of the imagination and clearly are insufficient to support a claim for copyright infringement. The use of "fight vignettes" in a film about a boxer is not copyrightable. Further, Plaintiff's second allegedly common element "use of sound and pictures" is incomprehensible when applied to a literary work such as the 1963 Screenplay. Obviously there were no sounds or photos in the screenplay itself. The element of "popping camera flashbulbs" is both a historical fact and also flows generically from any description (whether written or visual) of a major sporting event in the 1940's or 1950's. Finally, the fact that LaMotta was described as "playing possum" by a fight commentator is nothing more than historical fact. Further, these purported "elements" are simply scenes-a-faire that naturally flow from the idea of a movie about a professional boxer. As such, these concepts are not subject to copyright protection. See e.g. Berkic, infra, 761 F.2d at 1293-94 (denying protection to "familiar scenes and themes [which] are among the very staple of modern American literature and film"); Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986) (denying protection to "'stock' themes commonly linked to a particular genre").

In sum, these alleged common "elements" are woefully insufficient to support a claim for copyright infringement. Plaintiff's infringement claim is unambiguously and completely barred by Plaintiff's failure to file timely renewals of the copyright registration in the Book and 1973 Screenplay, and, therefore, must be dismissed.

1

2

3

**2.      Defendants Were Given Motion Picture Rights By The Co-Owner Of The Book And, Therefore, The Law Is Clear That Plaintiff Cannot Sue Defendants For Infringement.**

4      Plaintiff's purported copyright infringement claim also independently fails, as

5    a matter of law, because Plaintiff and Jake LaMotta are co-owners of the Literary

6    Works and LaMotta expressly authorized Defendants to use the Literary Works.[5]

7    Prior to January 1, 1978, U.S. copyright law was governed by the Copyright Act of

8    1909 (the "1909 Act").  The duration of copyright protection under the 1909 Act

9    was for two terms, an original and a renewal term, of 28 years each.  Under this two-

10   term system, the author owned the rights to the original term.  However, the author

11   would only have rights in the renewal term if he or she survived until the

12   commencement of the renewal term 28 years later.  If the author did not survive

13   until the commencement of the renewal term, then the author's successors, rather

14   than the author's assignee, could claim the rights to the renewal copyright in the

15   work.  See Miller Music Corp. v. Charles N. Daniels, Inc., 362 U.S. 373, 375

16   (1960).

17

---

18      [5] Petrella and LaMotta transferred the motion picture rights in the Literary

19   Works to Chartoff-Winkler Productions, Inc. (UMF 7), which in turn assigned the
     rights to Defendant United Artists Corporation ("UA") (UMF 12).  UA is a wholly

20   owned subsidiary of Defendant Metro-Goldwyn-Mayer Studios Inc.  UMF 13.
     There is no dispute that the other Defendants in this action derive their rights from

21   and through UA.  For purposes of this discussion, the term "Defendants" is used to

22   collectively refer to all the defendant entities exercising rights arising from
     Petrella's and LaMotta's license of the motion picture rights in the Literary Works.

23      The Book is clearly registered as a joint work and, although the Screenplays

24   were undoubtedly joint works, this is not material to the analysis.  The Book and the
     Screenplays contain nearly identical expression and Plaintiff has not identified any

25   material, protectable expression that exists in the Screenplays, but not in the Book.

26   Thus, rights to use the Book are equivalent to rights to use the same expression
     contained in the virtually identical Screenplays.  Moreover, Petrella and LaMotta

27   represented and warranted that, both the 1963 Screenplay and 1973 Screenplay were

28   based on the Book.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

1    Plaintiff claims that her father, Petrella, failed to survive into the second 28-
2    year term of the copyrights for the Literary Works (which began in 1991), and that,
3    therefore, Petrella's copyright interests in the Literary Works reverted to Petrella's
4    heirs and that Petrella's initial grant of motion picture rights is now void.  See
5    Stewart v. Abend, 495 U.S. 207, 208 (1990).  However, Plaintiff's claim is baseless
6    because **LaMotta** survived into the renewal term of the copyright for the Literary
7    Works, and his grant of rights remains valid regardless of whether or not Petrella's
8    heirs have authorized Defendants to continue to exploit the Literary Works.

9    Petrella (and, by succession, Plaintiff) and LaMotta were joint authors, co-
10   owners and co-registrants of the copyright in and to the Book.  See e.g. FAC at ¶¶
11   17, 18, 32, and 41.  And LaMotta granted defendants: "all motion picture rights…all
12   television motion picture and other television rights…the right for the purpose of
13   advertising and exploiting any motion pictures or other versions of the [Literary
14   Works] to broadcast and/or transmit by means of television or radio or any process
15   analogous thereto whether now known or hereafter devised, excerpts from the
16   [Literary Works] or any adaptation or version thereof, including any motion picture
17   or other version or versions thereof…"  UMF 8.

18   The fact that each co-owner has an independent right to use or license the use
19   of the copyright is well-established.  E.g., Meredith v. Smith, 145 F.2d 620, 621 (9th
20   Cir. 1944); Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 266,
21   268 (2d Cir. 1944).  Defendants acquired the motion picture rights to "Raging Bull"
22   pursuant to a valid assignment from CWP, itself the recipient of a valid assignment
23   by virtue of LaMotta's survival of the renewal term of his own copyright interests.

24   The issue of whether or not the licensee of only one joint author can be held
25   liable for infringement is black-letter copyright law, and has been recently
26   confirmed by both the Ninth and Second Circuits.  These courts have unequivocally
27   held that a grant from one co-author constitutes a non-exclusive license and that,
28   even if the other co-author does not consent to that grant of rights, the non-

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

1    consenting co-author has no rights as against the authorized licensee.  See

2    Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1145 (9th Cir. 2008)

3    ("unless all the other co-owners of the copyright joined in granting an exclusive

4    right to Sybersound, TVT, acting solely as a co-owner of the copyright, could grant

5    only a nonexclusive license"); Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007) ("a

6    licensee is not liable to a non-licensing co-owner for use authorized by the license,

7    because the licensee's rights rest on the license conveyed by the licensing co-

8    owner."); see also Nimmer, § 6.10[A], 2008 ("An authorization to the defendant

9    from one joint owner will be an effective defense to an infringement action brought

10   by another joint owner."); see also Piantadosi v. Loew's Inc., 137 F.2d 534, 537 (9th

11   Cir. 1943) (answering in the negative the question of "whether a third party licensed

12   to use a copyrighted work by one co-owner incurs liability for infringing the

13   copyright to other co-owners who gave no consent").

14        LaMotta's grant of rights remains valid and is a complete defense to

15   Plaintiff's claim for infringement.  As evidenced by Plaintiff's interrogatory

16   responses, there is virtually nothing (whether copyrightable or not) in the

17   Screenplays that was not included in the Book.  Therefore, Defendants remain

18   authorized, by LaMotta, to use the content of his autobiography (which content is

19   replicated in the two derivative Screenplays) and Plaintiff's infringement claim fails

20   as a matter of law.

21        **3.    There Is No Substantial Similarity Of Protectable Expression**

22        **Between The Film And The Literary Works.**

23        To prevail on a copyright infringement claim, a plaintiff must demonstrate:

24   "(1) ownership of a valid copyright, and (2) copying of constituent elements of the

25   work that are original."  Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d

26   1072, 1076 (9th Cir. 2006).  Thus, although the Literary Works and Film deal, in

27   part, with the same subject matter, Plaintiff does not have any basis to assert a

28

1  copyright claim unless protectable copyrightable elements in the Literary Works

2  were copied and used in the Film.  They clearly were not.

3       The determination of substantial similarity involves an analysis of the

4  "articulable similarities between the plot, themes, dialogue, mood, setting, pace,

5  characters, and sequence of events" in the two works.  Id., Kouf v. Walt Disney

6  Pictures and Television, 16 F.3d 1042, 1045 (9th Cir. 1994).  A court "compares,

7  not the basic plot ideas for stories, but the actual concrete elements that make up the

8  total sequence of events and the relationships between the major characters."  Berkic

9  v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985).  A plaintiff fails to satisfy the

10  extrinsic test if the similarities between the works arise from the use of

11  *unprotectable ideas*.  Kouf, 16 F.3d at 1045 (emphasis added).

12       The law clearly provides that similarities arising from historical facts and

13  events, like those asserted by Plaintiff, cannot serve as the basis of a claim for

14  copyright infringement.  Narell v. Freeman, 872 F.2d 907, 910-911 (9th Cir. 1989).

15            **a.    The Only Similarities Between The Literary Works**

16                 **And The Film Arise From The Common Use Of**

17                 **Historical Facts.**

18       "It is well settled that copyright protection extends only to an author's

19  *expression* of facts and not to the facts themselves.  This dichotomy between facts

20  and their expression derives from the concept of originality which is the premise of

21  copyright law."  Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 (5th

22  Cir. 1981) (citations omitted); Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir.

23  1990) ("[c]opyright law protects an author's expression; facts and ideas within a

24  work are not protected"); Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002)

25  ("protectable expression includes the specific details of an author's rendering of

26  ideas…"); Cano v. A World of Difference Inst., 1996 WL 371064 * 8 (N.D. Cal.

27  1996) (describing the "narrow scope of protection afforded a factual work").

28

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

Importantly, "[h]istorical facts and theories may be copied, as long as the defendant does not 'bodily appropriate' the expression of the plaintiff." Narell, 872 F.2d at 910-911 (9th Cir. 1989). "To avoid a chilling effect on authors who contemplate tackling an historical issue or event, broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or plots." Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 978 (2d Cir. 1980). Accordingly, the copyright in non-fiction or biographical works, such as the autobiographical works in this case, is "thin," that is, a court will only find infringement if the accused work is "virtually identical" to the plaintiff's work. See, Id. at 980 ("courts should assure themselves that the works before them are not virtually identical."). Plaintiff herself has conceded that the Literary Works and the Film are not, in fact, "virtually identical." UMF 34.

As demonstrated in Plaintiff's sworn interrogatory responses, *every single* purported similarity between the Literary Works and the Film relates solely to the unprotectable report of an historical fact (or constitutes an element that flows naturally from a description of those facts). UMF 35. Specifically, in her interrogatory responses, when requested to list all similarities between the Literary Works and the Film, Plaintiff listed over sixty such alleged "similarities." However, these alleged similarities are merely common autobiographical elements and are based on nothing more than the documented historical facts surrounding the life and career of Jake LaMotta.[6] UMF 36. Plaintiff herself conceded this fact in her deposition. UMF 36. Indeed, the Book, co-authored by LaMotta himself, is entitled "My Story," and any alleged facts, incidents or dialogue that purport to be historically accurate constitute unprotectable historical facts and, absent use of some

---

[6] It should be noted that in the 1976 Agreement between CWP and Petrella/LaMotta, LaMotta individually granted to CWP his life story rights, including but not limited to the right to use incidents, utterances and gestures from his life.

1  creative, protectable expression, may not form the basis of a suit for copyright

2  infringement.

3       This Court recently addressed a similar issue in the case of <u>Benay v. Warner</u>

4  <u>Bros. Ent., et al.</u>, No. 2:05-CV 08508 PSG (C.D. Cal. 2008).  In <u>Benay</u>, the Court

5  held that the plaintiff's screenplay entitled "The Last Samurai" and the defendants'

6  film entitled "The Last Samurai," which were both about an American war veteran

7  who moves to Japan to train the Japanese Army in Western warfare techniques to

8  help put down the Satsuma (samurai) Rebellion, were not substantially similar.  In

9  reaching this conclusion, the Court noted that "nearly all the similarities between the

10 works arise from non-copyrightable elements, such as historical facts and scenes-a-

11 faire, 'which flow naturally from generic plotlines.'"  Order Granting Summary

12 Judgment, <u>Benay</u>, [Docket No. 176] at * 13 (citing <u>Metcalf</u>, 294 F.3d at 1074).

13      More recently, in <u>Novak v. Warner Bros. Pictures LLC, et al.</u>, No. 2:07-CV

14 07-4000 GAF (C.D. Cal. 2008), this Court again determined that competing

15 depictions of historical events were not substantially similar.  Plaintiffs asserted a

16 claim for copyright infringement of their documentary chronicling the tragic 1970

17 plane crash that befell the Marshall University football team, against the producers

18 of the motion picture "We Are Marshall," which depicted the same events.  This

19 Court granted the defendants' motion for summary judgment, determining that "the

20 only protection available to Plaintiffs lies in their presentation of historical events by

21 which the Court refers to the sequencing, pace, narration, and selection of footage,

22 photographs, events and individuals portrayed – ***but not the events themselves***."

23 Order Granting Summary Judgment, <u>Novak</u>, [Docket No. 53] at *19 (emphasis

24 added).  "Though the two works tell the story of the November 14, 1970 air plane

25 crash, that event, and the events that preceded and followed, are all matters of public

26 record which cannot be copyrighted."  <u>Id</u>. at * 3.

27      Like <u>Benay</u> and <u>Novak</u> (as well as the Ninth Circuit's decision in <u>Narell</u> and

28 the Second Circuit's decision in <u>Hoehling</u>), the only similarities between the

Literary Works and the Film are based on the commonalities arising from depicting the key *facts* from the life and career of Jake LaMotta and from scenes-a-faire, which flow naturally from a story about an up-and-coming prizefighter.  There are simply no *protectable* similarities between the Literary Works and the Film and, as such, Plaintiff's copyright infringement claim must be dismissed.

> **b.    There Is No Substantial Similarity Between Protectable Elements Of The Film And The Literary Works.**

Although the Film and the Literary Works depict certain shared *biographical facts*: the life of boxer Jake LaMotta, his marriage to Vicki, his arrest, and several of his prominent fights, none of these elements are protectable under copyright law.  In fact, an analysis of the substantial similarity factors demonstrates that the works at issue bear no similarity in terms of protectable elements of expression.

> **(1)    Plot and Sequence of Events.**

A work's plot is defined as "the sequence of events by which the author expresses his theme or idea …"  See Shaw, 919 F.2d at 1363.  To the extent Plaintiff alleges protection in the historical sequencing of a selection of events from LaMotta's life, such a presentation is not protectable.  Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1075 (2d Cir. 1992) ("Since 'the narration of history must proceed chronologically,' this ordering is inevitable and thus is devoid of creativity.  In such circumstances sequence is non-copyrightable….").

Plaintiff claims approximately fifteen similarities relating to the "sequence of events" between the Literary Works and the Film.  UMF 37.  However, these events are all nothing more than historical facts, as documented in LaMotta's autobiography.  These allegedly protectable elements include "Jake meets Vickie and they become a couple"; "Mobsters visit Jake at the gym and also try to influence Pete/Joey to cooperate with the mob" Jake retires from boxing and moves to Miami with Vickie and his children"; and "Jake opens his own nightclub."  This "sequence

of events" is not protectable because it simply documents a chronological portion of Jake LaMotta's *actual life* and boxing career.  The sequence of events from a public figure's life does not constitute copyrightable expression and any copyright claim based on such requirement is without merit.

### (2)    Theme and Tone.

Plaintiff claims approximately fourteen similarities in "theme and plot" between the Literary Works and the Film.  These alleged similarities do not include any protectable expression and, instead, include such obviously factual elements as: "Real life boxer who grows up in the Bronx"; "A chronological perspective of Jake's life"; "A fighter who wont [sic] quit"; and "Use of fight vignettes; vignettes of Jake's personal life."  UMF 38.

These alleged similarities are nothing more than common historical facts included in the Literary Works as well as the Film.  There are no similar *protectable* elements between the theme and tone of the Literary Works and the Film.

### (3)    Characters.

Plaintiff has claimed seven "character" similarities between the Film and the Literary Works.  These purported "similarities" starkly illustrate Plaintiff's lack of concern for the distinction between protectable and unprotectable elements. Plaintiff alleges that the characters are substantially similar for purposes of copyright law because the Film and the Literary Works include the common "characters" of Jake LaMotta, LaMotta's brother, LaMotta's second wife, "various mob characters", "opponents in boxing events" and "unidentified women who Jake is interested in."  UMF 39.  Obviously these "similarities" are not protectable and simply are historical figures that played key roles in LaMotta's life.

### (4)    Settings.

Plaintiff alleges that the works are substantially similar because they use the common settings of "Bronx neighborhood," "Jake LaMotta's apartment in the Bronx," "Bronx gymnasium," "Miami home of Jake and Vickie LaMotta" and

1    "fight arenas."  UMF 40.  These "similarities" are merely a function of telling the

2    story of LaMotta's life and constitute unprotectable, historical facts.

3                        **(5)    Dialogue.**

4            Plaintiff has claimed that, in a few instances, the dialogue between the

5    Literary Works and the Film is similar.  However, these purported similarities are

6    based on LaMotta's life story – which includes dialogue purporting to be factually

7    and historically accurate.  Further, the dialogue Plaintiff alleges is common to the

8    Film and the Literary Works involves dialogue that can be found in either the Book

9    or the 1973 Screenplay, which works cannot serve as the basis for a copyright

10   infringement claim for the reasons described above.

11           The sole piece of "dialogue" that is common to the 1963 Screenplay and the

12   Film is the use of the term "playing possum" by a fight commentator.  Such

13   language, however, to the extent it is not simply historical fact, naturally flows from

14   a movie involving boxing/fighting and does not rise to the level of copyrightable

15   expression.  See Grosso v. Miramax Film Corp., 383 F.3d 965, 967 (9th Cir. 2004)

16   (rejecting a claim of substantial similarity between two competing stories about

17   poker when "the only similarities in dialogue between the two works come from the

18   use of common, unprotectable poker jargon.").

19           As a matter of law, there is no similarity of protectable expression between

20   the Film and the Literary Works.

21       **B.      PLAINTIFF'S CLAIMS ARE BARRED BY LACHES.**

22           Plaintiff's claims are clearly barred by the doctrine of laches.  Laches is an

23   affirmative defense that will bar complaints for copyright ownership or

24   infringement.  See Danjaq LLC v. Sony Corp., et al., 263 F.3d 942, 947 (9th Cir.

25   2001).  To demonstrate laches, a defendant must prove (1) delay, (2) that the delay

26   was unreasonable and (3) resulting prejudice.  Danjaq, 263 F.3d at 950-51.  A

27   showing of either of two forms of prejudice will support a finding of laches –

28

1  evidentiary prejudice or expectations-based prejudice.  Danjaq, 263 F.3d at 955-56.
2  Both forms of prejudice are present in this case.

**1.    Plaintiff Delayed Eighteen Years Before Filing The Present**
**Suit.**

5     "[D]elay is to be measured from the time that the plaintiff knew or should
6  have known about the potential claim at issue."  Kling v. Hallmark Cards, Inc., 225
7  F.3d 1030, 1036 (9th Cir. 2000).  In this case, Plaintiff's eighteen-year delay in
8  filing suit over the alleged infringement of the 1963 Screenplay is inexcusable.

9     A delay of nearly **two decades** is deemed to be prejudicial, without the
10 necessity of any showing of either evidentiary or expectations-based prejudice.  See
11 e.g. Danjaq, 263 F.3d at 952 ("By any metric, [a] delay [of nineteen to thirty-six
12 years] is more than enough" to support a defense of laches); Kepner-Tregoe, Inc. v.
13 Executive Development, Inc., 79 F. Supp. 2d 474, 489 (D. N.J. 1999) ("Kepner's
14 fourteen-year disregard for its own interests epitomizes the apathy and inattention
15 which laches declines to defend" and noting that other courts have deemed
16 "inexcusable" "delays as short as three and six years in bringing copyright
17 infringement actions…").

18    In this case, for nearly two decades, Plaintiff clearly has had actual
19 knowledge of *the very same legal theories that she is asserting in this action*, yet
20 she failed to file suit until 2009.  Plaintiff herself engaged counsel in 1990 or 1991,
21 after having read about the Supreme Court's decision in Stewart v. Abend.  UMF
22 21.  After hiring counsel in 1990 or 1991, Plaintiff filed a renewal application for
23 the 1963 Screenplay, but knowingly elected to not take any action to enforce her
24 alleged rights.  Plaintiff testified that she declined to file suit because she understood
25 that the Film was not profitable at that point in time.  UMF 23.

26    Approximately seven years later after filing the renewal registration, in or
27 around September of 1998, an attorney retained by Plaintiff and representing the
28 Petrella family initiated correspondence with Defendants concerning Plaintiff's

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

alleged rights with respect to the 1963 Screenplay, and made numerous threats of imminent litigation.  UMF 24. In response, the Petrella family was told that there were no similarities between the Screenplays and the Film and was also informed that there was no basis for any claims against Defendants because Jake LaMotta's grant of rights remained valid and gave the Defendants the right to continue exploiting the Film.  UMF 25.

Even if the Court were to ignore the first seven years of delay (between 1991 and 1998) during which time Defendants invested millions of dollars to exploit the Film, Plaintiff's further delay of nearly *eleven years*, during which time Defendants expended even more resources and invested even more money into the Film, is patently unreasonable.  The Ninth Circuit in <u>Danjaq</u> held that a delay of nineteen years, relating to the plaintiff's asserted copyright interest in motion pictures, was unreasonable and affirmed dismissal of the plaintiff's claims.  There is no basis for any distinction between the eighteen-year delay in the present case and the nineteen-year delay in <u>Danjaq</u>, and Plaintiff's claim must be dismissed based on her unreasonable and inexplicable delay in filing suit.

## 2.    Defendants Will Suffer Expectations-Based Prejudice.

A demonstration of expectations-based prejudice requires a showing that defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."  <u>Danjaq,</u> 263 F.3d at 955.

Such expectations-based prejudice is plainly evident here.  As is clear from the Complaint, for the last two decades, various of the Defendants have arranged their affairs, invested in, licensed, and otherwise exploited the Film, all based on their understanding that Defendants were the rightful registrant and owner of the copyrights in the Film.  <u>See</u> FAC at ¶¶ 24-27; UMF 41.  Since Plaintiff's alleged rights vested in 1991, Defendants have invested in the Film by converting it to various formats, including VHS, DVD and Blu-Ray, and Defendants have entered into numerous agreements to license the Film for continued distribution and

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

publication over the course of the last two decades as well as in the future. UMF 42. Defendants have openly and notoriously exploited the Film and have spent millions on marketing, advertising and other exploitation of the Film over the course of the last decade. UMF 44. Defendants have also licensed the Film to various third parties for exploitation over the course of the next decade, based on Defendants continued understanding and belief that Plaintiff has no interest in the Film. UMF 46. To allow Plaintiff to acquire an interest in the Film after all of these years is patently inequitable as it would punish the Defendants for continuing to build and maintain public awareness and goodwill associated with the Film, including the millions spent on the 25th Anniversary Edition, and reward the Plaintiff for intentionally sitting on her rights until such time as she believed the Film was profitable.

Moreover, Plaintiff's selection of the Defendants in this action is further evidence of the expectations-based prejudice and the financial harm suffered as a result of Plaintiff's indefensible delay in pursuing her alleged rights. Defendant Twentieth Century Fox Home Entertainment LLC ("Fox") was named as a defendant for "distribut[ing] and/or assist[ing the MGM/UA defendants]" in the distribution of the Film. FAC, ¶11; UMF 47. Fox is a third party business partner of the MGM/UA defendants and has no actual or alleged ownership interest in the Film and/or the Literary Works, and Plaintiff's claim against it arises *solely* out of the fact that Fox has exploited the Film with the express authorization of the other defendants. This was a business arrangement made long after Plaintiff was aware of her claim. Jackson v. Axton, 25 F.3d 884, 889 (9th Cir. 1994) (prejudice found where defendant "arranged his business affairs around the Song, promoted the Song as his own, licensed the Song many times to third parties, and sold the Song"); Mappa Music Co. v. Universal-Polygram Int'l Pub., 62 U.S.P.Q.2d 1582, 1587 (C.D. Cal. 2002) (expectations-based prejudice found where defendants and third parties engaged in numerous and recent business dealings involving the song). The

1   Ninth Circuit has also held that a presumption of prejudice arises from delay,

2   especially delay without good cause, as is the case here.  <u>Jackson</u>, 25 F.3d at 889

3   (dismissing case for co-authorship and accounting brought ***sixteen years*** after the

4   claim was known to the plaintiff).

5       Because Plaintiff unreasonably and intentionally delayed in bringing this suit,

6   and Defendants would manifestly suffer expectations-based prejudice by the

7   untimely alteration of copyright ownership Plaintiff seeks by her Complaint,

8   Plaintiff's Complaint is barred by the doctrine of laches.[7]

9       **C.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS**

10          **PREEMPTED BY THE COPYRIGHT ACT.**

11      An unjust enrichment claim premised on alleged misappropriation of a

12  copyrightable work is preempted because it seeks recovery for purported rights that

13  are equivalent to rights protected by the Copyright Act.  A state-law claim is

14  preempted if it seeks to protect "rights that are equivalent to" those protected by the

15  Copyright Act, and involves a work within the "subject matter of copyright."

16  <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1212 (9th Cir. 1998) (quoting,

17  inter alia, 17 U.S.C. § 301(a)).

18      Pursuant to this test, any state law cause of action premised on an

19  unauthorized "use or copy[ing of] materials within the subject matter of copyright is

20  equivalent to the protection provided by section 106 of the Copyright Act" and thus

21  is preempted.  <u>Del Madera Properties v. Rhodes</u>, 820 F.2d 973, 977 (9th Cir. 1987),

22  <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy</u>, 510 U.S. 517, 533 (1994).

23

24  _____

25      [7] Defendants have also suffered "evidentiary prejudice" based on the decades-long delay in filing suit.  Per Plaintiff's testimony, LaMotta is apparently no longer

26  competent to testify.  UMF 30.  Therefore, Defendants may be unable to elicit

27  testimony from LaMotta regarding whether or not the facts that are included in the Literary Works and the Film are simply historical events from his life, or to confirm

28  when the various works were written or the full extent of his contributions thereto.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)

1    Plaintiff's unjust enrichment claim is "completely" preempted by the

2  Copyright Act because, by seeking to recover for Defendants' allegedly

3  unauthorized production, distribution and exploitation of VHS cassettes, DVDs, etc.,

4  Plaintiff seeks to vindicate the same rights that are equivalent to those protected by

5  the Copyright Act.  See FAC, ¶¶ 56, 57.  It is firmly established that the Copyright

6  Act preempts state law claims for unjust enrichment, as such claims merely

7  duplicate – in the language of "quasi contract" or "unearned benefits" – rights

8  protected by copyright.  Del Madera Properties, 820 F.2d at 977; Xerox Corp. v.

9  Apple Computer, Inc., 734 F. Supp. 1542, 1550 (N.D. Cal. 1990).  Nor can plaintiff

10  salvage this purported cause of action by characterizing it as one for an "implied in

11  law contract" or "restitution based on quasi-contract."  See Firoozye v. Earthlink

12  Network, 153 F. Supp.2d 1115, 1126 (N.D. Cal. 2001).  Thus, Plaintiff's unjust

13  enrichment claim is preempted as a matter of law.

14    **D.    A CO-OWNER CANNOT SUE AN AUTHORIZED LICENSEE**

15    **FOR AN ACCOUNTING.**

16    Plaintiff's claim for "accounting" is without merit because Defendants are

17  authorized to exploit the Film (through the grant of motion picture rights given to

18  Defendants' predecessor-in-interest) by Jake LaMotta.  Plaintiff's claim, if any, lies

19  against the co-owner granting the rights in the underlying works, not against a

20  licensed third party.  Plaintiff's father and LaMotta were co-owners of the

21  copyrights in the Literary Works and they jointly granted Defendants' predecessor-

22  in-interest the right to create a motion picture based on those works, while retaining

23  other rights under the copyrights to the Literary Works for themselves.  UMF 8.  "A

24  licensee is not liable to a non-licensing co-owner for use authorized by the license,

25  because the licensee's rights rest on the license conveyed by the licensing co-

26  owner."  Davis, 505 F.3d 90, 100 (citing McKay v. Columbia Broad. Sys. Inc., 324

27  F.2d 762, 763 (2d Cir. 1963)).  "Likewise, a licensee need not pay any royalties or

28  other consideration to the co-owners who are not parties to the license agreement."

1  Id. (citing Piantadosi, 137 F.2d at 537, for the proposition that "a third party granted

2  a non-exclusive copyright license by one co-owner [has] no duty to the other co-

3  owner.").  This concept is explained in further detail in Nimmer, § 6.12[C][3]:

> Suppose, for example, that A and B are joint authors of a
> novel.  They both join in a transfer of exclusive motion
> picture rights in the novel to C.  Under the concept of
> copyright divisibility adopted in the current Copyright Act
> C is not a joint owner of 'the copyright' in the
> [underlying] work…instead, he is the sole owner of
> motion picture rights, while A and B remain joint owners
> of the book publication rights, the legitimate stage rights,
> etc.  Since C is not a joint owner with A and B, he need
> not account to them for any proceeds he may receive from
> the further exploitation of motion picture rights.

10      Plaintiff may not state a claim for accounting against Defendants because

11  Plaintiff and LaMotta remain joint owners of the underlying rights to the Book (and

12  the other Literary Works) and presumably LaMotta and Plaintiff are still receiving

13  royalties from continued publication of the Book – Defendants certainly are not.

14  Therefore, any "accounting" remedy relating to the exploitation of those works must

15  be asserted against LaMotta, and not against a third party licensed to exploit the

16  motion picture rights in the Book.

## IV.    CONCLUSION

18      For all of the foregoing reasons, Defendants respectfully submit that summary

19  judgment be granted in favor of Defendants and Plaintiff's First Amended

20  Complaint be dismissed with prejudice.

Dated:  September 25, 2009              LOEB & LOEB LLP
                                       JONATHAN ZAVIN
                                       DAVID GROSSMAN
                                       ROBERT J. CATALANO


                                       By:   /s/ David Grossman
                                             David Grossman
                                             Attorneys for Defendants

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR SUMMARY JUDGMENT
Case No. CV 09-0072 GW (MANx)