1  DAVID GROSSMAN (SBN 211326)
   dgrossman@loeb.com
2  ROBERT J. CATALANO (SBN 240654)
   rcatalano@loeb.com
3  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
4  Los Angeles, California 90067-4120
   Telephone: 310-282-2000
5  Facsimile: 310-282-2200

6  JONATHAN ZAVIN (Admitted *pro hac vice*)
   jzavin@loeb.com
7  LOEB & LOEB LLP
   345 Park Avenue
8  New York, New York 10154-1895
   Telephone: 212-407-4000
9  Facsimile: 212-407-4990

10 Attorneys for Defendants

11

12                 UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15 PAULA PETRELLA, an individual,       )  Case No. CV 09-0072 GW (MANx)
                                        )
16              Plaintiff,              )  Assigned to Hon. George H. Wu
                                        )
17         v.                           )  **DEFENDANTS' STATEMENT OF**
                                        )  **UNCONTROVERTED FACTS AND**
18 METRO-GOLDWYN-MAYER, INC.,           )  **CONCLUSIONS OF LAW IN**
   a corporation; METRO-GOLDWYN-        )  **SUPPORT OF MOTION FOR**
19 MAYER STUDIOS, INC., a               )  **SUMMARY JUDGMENT**
   corporation; METRO-GOLDWYN-          )
20 MAYER HOME ENTERTAINMENT,            )  Date: October 22, 2009
   LLC, a limited liability company;    )  Time: 8:30 a.m.
21 METRO-GOLDWYN-MAYER HOME             )  Courtroom: 10
   ENTERTAINMENT DISTRIBUTION           )
22 CORPORATION, a corporation;          )
   UNITED ARTISTS CORPORATION, a        )
23 corporation; 20TH CENTURY FOX        )
   HOME ENTERTAINMENT, LLC, a           )
24 limited liability company; and DOES 1)
   THROUGH 10, inclusive,               )
25                                      )
                Defendants.             )
26                                      )
                                        )
27 _____  )

28

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Central District Local Rule 56-1, defendants METRO-GOLDWYN-MAYER INC. (erroneously sued as "METRO-GOLDWYN-MAYER, INC."), METRO-GOLDWYN-MAYER STUDIOS INC. (erroneously sued as "METRO-GOLDWYN-MAYER STUDIOS, INC."), METRO-GOLDWYN-MAYER HOME ENTERTAINMENT LLC (erroneously sued as "METRO-GOLDWYN-MAYER HOME ENTERTAINMENT, LLC"), MGM HOME ENTERTAINMENT DISTRIBUTION CORP. (erroneously sued as "METRO-GOLDWYN-MAYER HOME ENTERTAINMENT DISTRIBUTION CORPORATION") (the first four defendants are collectively referred to as "MGM"), UNITED ARTISTS CORPORATION, TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC (erroneously sued as "20TH CENTURY FOX HOME ENTERTAINMENT, LLC") (collectively with MGM, "Defendants") submit this Separate Statement of Uncontroverted Facts and Conclusions of Law in support of their concurrently filed Motion for Summary Judgment.

## **UNCONTROVERTED FACTS**

| **Uncontroverted Material Fact:** | **Supporting Evidence:** |
|---|---|
| 1. After Jake LaMotta retired from boxing, he collaborated with his long-time friend, Frank Peter Petrella ("Petrella") to write a book about LaMotta's life as a champion boxer (the "Book"). | First Amended Complaint ("FAC") ¶ 17 [Docket No. 28]; Declaration of David Grossman ("Grossman Decl."), Ex. J. |
| 2. Frank Peter Petrella ("Petrella") and Jake LaMotta jointly registered a copyright for the Book in July 1970, at the time the Book was published. | FAC ¶¶ 17, 18; Grossman Decl., Ex. M. |
| 3. Petrella and LaMotta collaborated on the writing of a screenplay based on LaMotta's life story in | Grossman Decl., Ex. I. |

| | | |
|---|---|---|
| | 1963 (the "1963 Screenplay"). | |
| 4. | Petrella registered a copyright for the 1963 Screenplay with the United States Copyright Office on October 9, 1963. | FAC at ¶ 16; Grossman Decl., Ex. L. |
| 5. | The 1963 Screenplay was a joint creation of LaMotta and Petrella. | Grossman Decl., Ex. I. |
| 6. | Petrella wrote a second screenplay, also based on the Book, in 1973 (the "1973 Screenplay") and registered a copyright in and to the 1973 Screenplay with the Copyright Office in July 1973. | Id. at ¶¶ 19, 20; Grossman Decl., Ex. N. |
| 7. | Pursuant to a written agreement dated November 19, 1976, Petrella and LaMotta assigned their respective motion picture rights, titles, and interests in the Book, the 1963 Screenplay and the 1973 Screenplay to Chartoff-Winkler Productions, Inc. ("CWP") for the purposes of developing a motion picture based on those works. | Id. at ¶¶ 21, 22; Grossman Declaration, Ex. A. |
| 8. | LaMotta (and Petrella), pursuant to the 1976 Agreement, granted to CWP "all rights of whatsoever kind and nature, under copyright and otherwise, through the universe in and to the [Literary Works]…including, without limitation, all motion picture rights…all television motion picture and other television rights…the right for the purpose of advertising and exploiting any motion pictures or other versions of the [Literary Works] to broadcast and/or transmit by means of television or radio or any | Grossman Decl., Ex. A. |

| | | |
|---|---|---|
| | process analogous thereto whether now known or hereafter devised, excerpts from the [Literary Works] or any adaptation or version thereof, including any motion picture or other version or versions thereof…" | |
| 9. | In the 1976 Agreement, LaMotta and Petrella "represent[ed] and warrant[ed] that … the [Book] is original and has not been copied or adapted from any literary, dramatic or other work… | <u>Id.</u> |
| 10. | In the 1976 Agreement, LaMotta and Petrella represented and warranted that the 1963 and 1973 Screenplays were not adapted from any other works <u>except the Book</u>. | <u>Id.</u> |
| 11. | The 1976 Agreement transfers "all the motion picture and certain allied rights in" the Book, and the 1963 and 1973 Screenplays which were "based on [the Book]…" | <u>Id.</u> |
| 12. | In or about September 1978, United Artists Corporation ("UA") acquired the motion picture rights to "Raging Bull" (the "Film") pursuant to a written assignment from CWP. | FAC at ¶ 24; Grossman Declaration, Ex. B. |
| 13. | UA is a wholly owned subsidiary of Defendant Metro-Goldwyn-Mayer Studios Inc. ("MGM"). | FAC at ¶ 10 |
| 14. | UA registered a copyright in and to the Film in or about September 1980. | FAC at ¶ 25 |
| 15. | Petrella died in December 1981, during the original 28-year term of the copyrights for the Literary Works. | <u>Id.</u> at ¶ 28 |

| | | | |
|---|---|---|---|
| 16. | At the time of his death, Petrella was survived by his wife, his son, and his daughter (Plaintiff). | | <u>Id.</u> |
| 17. | Petrella's renewal rights in the Literary Works passed to his three statutory heirs – his wife, son, and daughter – after the expiration of the original term of each copyright. | | <u>Id.</u> at ¶ 29 |
| 18. | Plaintiff's mother died in 2005 and shortly thereafter, Plaintiff's brother transferred his rights, if any, in the Literary Works to Plaintiff. | | <u>Id.</u> at ¶¶ 30, 31 |
| 19. | Plaintiff alleges that she is now the sole owner of the Petrella interest in the three Literary Works, subject to LaMotta's interest as a joint author. | | <u>Id.</u> at ¶ 32 |
| 20. | Plaintiff has worked in the television and motion picture industry in New York and Los Angeles for nearly twenty years. | | Grossman Decl., Ex. C, pp. 15-20 |
| 21. | In 1990 Plaintiff read in The Hollywood Reporter about the U.S. Supreme Court decision of <u>Stewart v. Abend</u> (addressing renewal rights of statutory heirs under the Copyright Act) and promptly engaged an entertainment attorney, Lawrence Shire, to assist her in pursuing a copyright infringement claim against Defendants with respect to the Film. | | <u>Id.</u>, pp. 22-23, 27-28 |
| 22. | In 1991, Plaintiff's attorney filed a renewal registration for the 1963 Screenplay. | | <u>Id.</u>, pp. 31; Grossman Decl., Ex. L. |
| 23. | Plaintiff did not make any claims against Defendants at the time that | | Grossman Decl., Ex. C, pp. 29-30; 30-31. |

| | | |
|---|---|---|
| | the renewal registration for the 1963 Screenplay was filed and in fact, decided not to pursue litigation at that time because she believed that the Film had not yet made a profit. | |
| 24. | In or around September of 1998, Mr. Shire's firm contacted MGM (a fact known by Plaintiff's current counsel) concerning Defendant's exploitation of the Film and the impact of this exploitation on Plaintiff's purported rights. | Grossman Decl., Exs. D-G. |
| 25. | MGM rejected Plaintiff's claim and explained that MGM was granted the right to exploit the Book by LaMotta. Plaintiff was also advised at that time that no protectable elements from the Literary Works were used in the Film. | Id. |
| 26. | Plaintiff was aware of her potential claims since no later than 1991, and yet consciously decided not to file a lawsuit until 2009. | Grossman Decl., Ex. C, pp. 65-67, 75-78 |
| 27. | Plaintiff did not attempt to renew the copyrights in the 1973 Screenplay and the Book until November 2008. | Grossman Decl., Ex. C, pp.79-83; Exs. P, Q |
| 28. | Defendants have distributed, and otherwise exploited the Film through various media. | FAC at ¶¶ 26, 33-39; Declaration of Edward Slizewski ("Slizewski Decl."), ¶¶ 4-6 |
| 29. | Defendants have continued, since 1991, to expend substantial resources and money on promoting, advertising and distributing the Film, including almost $8.5 million in the United States during that time period. | Slizewski Decl., ¶¶ 4-5 |

| | | |
|---|---|---|
| 30. | LaMotta himself is unlikely to be able to testify. | Grossman Decl., Ex. C, pp. 47, 84-85 |
| 31. | Plaintiff testified that, although she has met LaMotta hundreds of times in her life, the last time she saw him, he no longer recognized her. | Id. |
| 32. | In sworn interrogatory responses, Plaintiff identified dozens of allegedly "copyrightable" elements that are included in all three Literary Works. | Grossman Decl., Ex. H. |
| 33. | There are only four allegedly copyrightable elements common to the Film and the 1963 Screenplay that, according to Plaintiff, do not exist in either the Book or the 1973 Screenplay. Those allegedly copyrightable elements are: "use of fight vignettes and vignettes of Jake's personal life"; "use of sound or pictures from actual fights"; "popping camera flashbulbs"; and the fact that a commentator at one of LaMotta's fights sad that he was "playing possum." | Id. |
| 34. | As conceded by Plaintiff, although they all involve the life and career of Jake LaMotta, the Literary Works and the Film are not "virtually identical." | Grossman Decl., Ex. C, pp. 45-46. |
| 35. | Every single purported similarity between the Literary Works and the Film relates solely to the unprotectable report of an historical fact (or constitutes an element that flows naturally from a description of those facts). | Grossman Decl., Ex. G. |
| 36. | The alleged similarities between | Grossman Decl., Ex. B, pp. 47-56 |

| | | |
|---|---|---|
| | the Literary Works and the Film listed by Plaintiff in her interrogatory responses are autobiographical elements based on historical facts from LaMotta's life. | |
| 37. | Plaintiff claims numerous alleged similarities relating to the "sequence of events" between the Literary Works and the Film. These events are all historical facts, as documented in Jake LaMotta's autobiography, including "Jake meets Vickie and they become a couple"; "Mobsters visit Jake at the gym and also try to influence Pete/Joey to cooperate with the mob"; "Jake retires from boxing and moves to Miami with Vickie and his children"; and "Jake opens his own nightclub." | Grossman Decl., Ex. G |
| 38. | The approximately fourteen "theme and plot" similarities between the Literary Works and the Film claimed by Plaintiff do not include protectable expression, and consist of such factual elements as "Real life boxer who grows up in the Bronx"; "A chronological perspective of Jake's life"; "A fighter who wont [sic] quit;" and "Use of fight vignettes; vignettes of Jake's personal life." | <u>Id.</u> |
| 39. | Plaintiff has claimed seven "character" similarities between the Film and the Literary Works. The character similarities claimed by Plaintiff include the common "characters" of Jake LaMotta, LaMotta's brother, LaMotta's | <u>Id.</u> |

| | | |
|---|---|---|
| | second wife, "various mob characters", "opponents in boxing events" and "unidentified women who Jake is interested in." | |
| 40. | Plaintiff alleges that the Film and the Literary Works are substantially similar because they use the common settings of "Bronx neighborhood," "Jake LaMotta's apartment in the Bronx," "Bronx gymnasium," "Miami home of Jake and Vickie LaMotta" and "fight arenas." | <u>Id.</u> |
| 41. | Over the last two decades, various of the Defendants have arranged their affairs, invested in, licensed, and otherwise exploited the Film, all based on their understanding that Defendants were the rightful registrant and owner of the copyrights in the Film. | Slizewski Decl., ¶¶ 4-7, 9 |
| 42. | Defendants have invested in the Film by converting it to various formats, including DVD, Blu-Ray and High Definition, and Defendants have entered into numerous agreements to license the Film for continued distribution and publication over the course of the last two decades as well as in the future. | <u>Id.</u> at ¶¶ 4, 9 |
| 43. | License agreements relating to future distribution also have been entered into (prior to the institution of this lawsuit) and provide for the Film to be distributed through defendant Twentieth Century Fox Home Entertainment LLC. | <u>Id.</u> at ¶ 9 |
| 44. | Defendants have spent millions on | <u>Id.</u> at ¶¶ 5, 6 |

| | | |
|---|---|---|
| | marketing, advertising and other exploitation of the Film over the course of the last decade. | |
| 45. | In 2004-2005, the MGM Entities spent approximately $3 million to create, promote and distribute a 25th Anniversary Edition of the Film which was released in 2005. In 2008 and early 2009, the MGM Entities again incurred more than one hundred thousand dollars in costs to convert Raging Bull to Blu-Ray and to promote, market and distribute the Film in that medium. | Id. at ¶ 6 |
| 46. | Defendants have also licensed the Film to various third parties for exploitation over the course of the next decade. | Id. at ¶ 7 |
| 47. | Fox was named as a defendant for "distribut[ing] and/or assist[ing the MGM/UA defendants]" in the distribution of the Film. | FAC, ¶ 11. |

## CONCLUSIONS OF LAW

| **Undisputed Conclusion of Law:** | **Supporting Law:** |
|---|---|
| **Plaintiff's Copyright Claim Is Baseless Because Plaintiff Failed to Timely Renew the Copyrights In the Book and the 1973 Screenplay and, Therefore, Cannot Prevent Defendants From Continuing To Exploit A Derivative Work Based On Those Literary Works** | |
| 1.   To prevent continued exploitation of derivative works created during the original copyright term, a renewal claimant must file a renewal application within one year prior to the expiration of the initial 28-year term | 17 U.S.C. § 304(a)(4)(A) |

| | | |
|---|---|---|
| 2. | If an application to register a claim to the renewed and extended term of a copyright in a work is not made within 1 year before the expiration of the original term of copyright in a work … then a derivative work prepared under authority of a grant of a transfer or license of the copyright that is made before the expiration of the original term of copyright may continue to be used under the terms of the grant during the renewed and extended term of copyright without infringing the copyright… | 17 U.S.C. § 304(a)(4)(A) |
| **The Licensee of One Joint Author Cannot Be Held Liable for Infringement By Non-Consenting Author** | | |
| 3. | A grant from one co-author constitutes a non-exclusive license and even if the other co-author does not consent to that grant of rights, the non-consenting co-author has no rights as against the authorized licensee. | Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1145 (9th Cir. 2008); Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007); Piantadosi v. Loew's Inc., 137 F.2d 534, 537 (9th Cir. 1943); Nimmer, § 6.10[A], 2008 ("An authorization to the defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner.") |
| **The Film and The Literary Works Are Not Substantially Similar** | | |
| 4. | To prevail on a copyright infringement claim, a plaintiff must demonstrate: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. | Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1076 (9th Cir. 2006) |
| 5. | The determination of substantial similarity involves an analysis of | Id.; Kouf v. Walt Disney Pictures and Television, 16 F.3d 1042, 1045 |

| | | |
|---|---|---|
| | the articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of two works. | (9th Cir. 1994) |
| 6. | Copyright protection extends only to an author's expression of facts, and not to the facts themselves. | Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 (5th Cir. 1981); Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990); Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002) |
| 7. | Historical facts are not copyrightable. | Narell v. Freeman, 872 F.2d 907, 910-911 (9th Cir. 1989) |
| **Plaintiff's Claims Are Barred By Laches** | | |
| 8. | To demonstrate laches, a defendant must prove (1) delay, (2) that the delay was unreasonable and (3) resulting prejudice. | Danjaq LLC v. Sony Corp., et al., 263 F.3d 942, 947 (9th Cir. 2001) |
| 9. | Prejudice is presumed where there is no good cause for the delay. | Jackson v. Axton, 25 F.3d 884, 889 (9th Cir. 1994) |
| 10. | A showing of either of two forms of prejudice will support a finding of laches – evidentiary prejudice or expectations-based prejudice. | Danjaq LLC, 263 F.3d at 955-56 |
| **Plaintiff's Claim for Unjust Enrichment Is Preempted By the Copyright Act** | | |
| 11. | A state law claim is preempted by the Copyright Act if it seeks to protect rights that are equivalent to those protected by the Copyright Act, and involves a work within the subject matter of copyright. | Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998) (quoting, inter alia, 17 U.S.C. § 301(a)) |
| **A Co-Owner Cannot Sue an Authorized Licensee For An Accounting** | | |
| 12. | A grant from one co-author constitutes a non-exclusive license and even if the other co-author | Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1145 (9th Cir. 2008); Nimmer, § 6.12[C][3]: Suppose, for |

12

| | |
|---|---|
| does not consent to that grant of rights, the non-consenting co-author has no rights either for infringement or accounting as against the authorized licensee. | example, that A and B are joint authors of a novel.  They both join in a transfer of exclusive motion picture rights in the novel to C.  Under the concept of copyright divisibility adopted in the current Copyright Act C is not a joint owner of 'the copyright' in the [underlying] work…instead, he is the sole owner of motion picture rights, while A and B remain joint owners of the book publication rights, the legitimate stage rights, etc.  Since C is not a joint owner with A and B, he need not account to them for any proceeds he may receive from the further exploitation of motion picture rights. |

Dated:  September 25, 2009

LOEB & LOEB LLP
DAVID GROSSMAN
ROBERT J. CATALANO

By:/s/ David Grossman
        David Grossman
        Attorneys for Defendants