# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

PAULA PETRELLA,

               Plaintiff(s),

       v.

METRO-GOLDWYN-MAYER, INC., et al.,

            Defendant(s).

No. CV 09-72-GW(MANx)

**STATEMENT OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Petrella v. Metro-Goldwyn Mayer, Inc.*, Case No. CV-09-0072
Statement of Decision on Defendants' Motion for Summary Judgment

## I. INTRODUCTION

This is an action for copyright infringement.[1]  Plaintiff Paula Petrella ("Plaintiff") is the heir of an author of an original work which allegedly became the basis for the film, "Raging Bull" (the "Film").  Defendants Metro-Goldwyn-Mayer Inc., Metro-Goldwyn-Mayer Studios Inc., Metro-Goldwyn-Mayer Home Entertainment LLC, MGM Home Entertainment Distribution Corp. (together, "MGM"), United Artists Corporation ("UA"), and Twentieth Century Fox Home Entertainment LLC (collectively, "Defendants") are the ostensible owners of copyright (and/or distribute or assist in the distribution) of the Film.  Plaintiff's lawsuit presents, potentially, an interesting variation on the problems that might arise from the fact that a derivative work cannot be exploited after the expiration of the original copyright term in the underlying work without the consent of the copyright owner in the renewal term.  See generally, Stewart v. Abend, 495 U.S. 207, 220 (1990).  Because Defendants have established each element of the equitable defense of laches, however, and because Plaintiff has not identified any material fact in dispute as to whether there was deliberate infringement, the Court need not address in this decision the question of whether there are such similarities between the underlying work and the derivative work that Plaintiff's ownership of the underlying work might allow her to prevent the Film from being shown or distributed.

Defendants' Motion for Summary Judgment and supporting papers were filed on September 25, 2009.  Plaintiff's Opposition was filed on October 13, 2009.  Reply papers were filed on October 15, 2009.  Oral argument was heard on October 22, 2009.  After considering all of the parties' papers and oral arguments, the Court now GRANTS Defendants' Motion for Summary Judgment.

## II. BACKGROUND

Plaintiff's father, Frank Petrella ("Petrella"), collaborated with his long-time friend, Jake LaMotta ("LaMotta"), to produce a book (the "Book") and two screenplays (the "1963 Screenplay" and the "1973 Screenplay") (together, the "Subject Works") about LaMotta's life.  Together, the Subject Works allegedly became the basis for the movie, "Raging Bull," which was released in 1980.  All of the Subject Works were registered with the United States Copyright Office.  The 1963 Screenplay was registered in 1963, listing Petrella as the claimant and sole author.  See Declaration of David Grossman ("Grossman Decl.") at Exhibit ("Ex.") L (Docket No. 43).  This notwithstanding, the title page of the 1963 Screenplay states that it was written "in collaboration with" LaMotta.  Id., Ex. I.  The Book was registered in 1970, listing "Peter Savage" (a pseudonym of Petrella), LaMotta, and Joseph Carter as co-authors.  Id., Ex. M.  The 1973 Screenplay was registered in 1973, listing Petrella as the sole author and giving 1970 as the date of publication.  Id., Ex. N.  On the copyright registration certificate issued, it was noted that the

---

[1] The First Amended Complaint ("FAC") contains three causes of action: 1) copyright infringement, 2) unjust enrichment, and 3) accounting.

work, "The Raging Bull," was a "screenplay from the book of the same name." Id.

Pursuant to a written agreement dated November 19, 1976 (the "1976 Agreement"), Petrella and LaMotta assigned to Chartoff-Winkler Productions, Inc. ("CWP"), "exclusively and forever, including all periods of copyright and renewals and extensions thereof," all of their respective copyright rights in the Book and "in and to those certain screenplays based on [the Book] which were written in 1963 and 1973," save for a reservation of certain rights (not at issue herein) to the authors of the Book. See Defendant's Response to Plaintiff's Statement of Genuine Issues in Dispute ("RSS") at No. 7; see also Grossman Decl., Ex. A. The 1976 Agreement represented that the Book "is original and has not been copied or adapted from any literary, dramatic, or other work." RSS No. 9; Grossman Decl., Ex. A. It further represented that "[t]he Petrillo (sic) Screenplays are original and have not been copied or adapted from any literary, dramatic, or other work other than [the Book]." RSS No. 10.

In or about September 1978, UA (a wholly owned subsidiary of MGM) acquired the motion picture rights to "Raging Bull" pursuant to a written assignment from CWP. RSS Nos. 12, 13. UA registered a copyright in the film in or about September 1980. RSS No. 14. Petrella died in 1981 during the original 28-year term of the copyrights for the Subject Works, and his renewal rights in the Subject Works passed to his heirs.[2] RSS Nos. 15 - 17. Plaintiff alleges that she is now the sole owner of the Petrella interest in the three Subject Works. See RSS No. 19. In 1990, Plaintiff learned of the Stewart v. Abend decision and engaged an entertainment attorney, Lawrence Shire, to advise and assist her regarding her renewal rights in the Subject Works. See RSS No. 21. In 1991, Plaintiff's attorney filed a renewal registration for the 1963 Screenplay. RSS No. 22. Plaintiff did not make any claims or pursue litigation at that time. RSS No. 23. Plaintiff did not timely renew the copyrights in the 1973 Screenplay or the Book. See RSS No. 27.

In or about September 1998, attorney Shire contacted MGM concerning Defendants' exploitation of the film. RSS No. 24. MGM rejected Plaintiff's claim on two bases. See RSS No. 25. First, it contended that the 1963 Screenplay was a collaboration between Petrella and LaMotta, so it retained all necessary rights in the script pursuant to its agreement with LaMotta. See id.; Grossman Decl. Ex. E. Second, it contended that there was no substantial similarity of protectable elements between the Film and the 1963 Screenplay. Id. Subsequently, as reflected in the current motion, Defendants refined their position to argue that it does not matter whether Petrella was the sole author of the 1963 Screenplay, because Petrella and LaMotta represented that the 1963 Screenplay was based on the Book. See RSS No. 25. With their Reply brief, Defendants further clarify their argument to state that, because LaMotta was a co-author of the Book who had the power to fully assign his interest in that property, even if the Court were to find that the Book is a derivative work based on the 1963 Screenplay, LaMotta's assignment of rights to the Book to Defendants means that they cannot be liable for copyright infringement with respect to the 1963 Screenplay. The Court would reject the latter contention except as to material that is unique to the Book (and to the 1970 Screenplay and to the historical facts of LaMotta's life) as opposed to the 1963 Screenplay.

---

[2] Joseph Carter was reported to have died in 1984. See Grossman Decl. Ex. P at Bates-stamped page PP00747.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, there must be sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." Id. "The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks and citations omitted).

## IV. ANALYSIS

### A. There Is a Factual Dispute Whether the Book Is a Derivative Work

Although Plaintiff's Complaint treats the three Subject Works together as the basis for her claim of copyright infringement (and alleges that all three works have been properly renewed), it is clear that analysis of her claims must focus on the 1963 Screenplay alone, as she now concedes that is the only one of the Subject Works for which a timely renewal has been filed. "In the absence of an agreement to the contrary, one joint owner may always transfer his interest in the joint work to a third party, subject only to the general requirements of a valid transfer of copyright." 1 Nimmer on Copyright § 6.11 at 6-38.1 (2009) ("Nimmer"). Thus, in order to have a claim for copyright infringement with respect to the 1963 Screenplay, it would seem that Plaintiff must contend that it is, as its registration certificate states, a work of sole authorship. In addition, and more problematically, in order to show infringement of any elements that are present in the 1963 Screenplay (and are also present in the Book and/or the 1973 Screenplay), Plaintiff would have to be able to show: 1) that, contrary to Petrella's representation in the 1976 Agreement, the Book is a derivative work based on the 1963 Screenplay, and 2) that Defendants' exploitation of the Film based on its ownership of rights in the Book would constitute infringement of Plaintiff's copyright in the 1963 Screenplay.

Even if Plaintiff could show that the Book is a derivative work, however, Defendants argue that they would still have the right to use the Book because they were granted rights in the Book by LaMotta. Even if LaMotta himself did not have the right to produce derivative works of the 1963 Screenplay, they argue, he could still, as a co-author of a derivative work based on that screenplay, grant rights in the derivative work which would serve as a defense to a claim of infringement of the underlying work.

Defendants' efforts to negate Plaintiff's contention that the 1963 Screenplay is a work of sole authorship are not compelling. Although the title page of the 1963 Screenplay states that it was written "in collaboration with" LaMotta, this attribution is not inconsistent with Petrella's claim of sole authorship unless it can be shown that LaMotta made some creative contribution to the screenplay. Defendants' inability to establish this precludes any finding for the purpose of

-3-

summary judgment that LaMotta was a co-author of the 1963 Screenplay.[3]

Whether the 1963 Screenplay is a derivative work based on the Book[4] and/or whether the Book is a derivative work based on the 1963 Screenplay, are somewhat harder questions, but they, too, do not have to be definitively answered in light of this Court's decision on the laches issue, infra. Moreover, the answers would only matter with respect to those protectable elements (if any) that are unique to the 1963 Screenplay. If the 1963 Screenplay were a derivative work of sole authorship based on the Book, and Defendants were assigned LaMotta's rights in the book, Defendants would share in the right to create derivative works based on the Book, but Plaintiff might still be able to assert a claim for copyright infringement based on any new elements in the 1963 Screenplay. Similarly, if the Book were a derivative work of the 1963 Screenplay, even if Defendants own the rights to the book, Plaintiff might still potentially have a claim of copyright infringement based on any copyrightable expression that exists in the 1963 Screenplay but not in the Book.[5]

There is at least a factual dispute whether the 1963 Screenplay is, as Defendants argue, a derivative work based on the Book. Plaintiff asserts that the 1963 Screenplay was created before the Book. The most compelling evidence in this regard seemingly be the Registration Certificates themselves. No date of publication is given on the Registration Certificate for the Book, but Defendants concede that the Book was published in 1970. See RSS No. 56. The question then arises as to how, then, the Book could be characterized as a "pre-existing work" to the 1963 Screenplay. See 17 U.S.C. § 101 (defining "derivative works"). Indeed, the "general rule" is that publication of a derivative work constitutes publication of the underlying work. See generally 1 Nimmer § 4.12[A] at 4-59. If the Book already existed at the time the 1963 Screenplay was registered, publication of the 1963 Screenplay arguably would have cast it into the public domain. See Richlin v. MGM Pictures, Inc., 531 F.3d 962, 964 (9th Cir. 2008) ("Publication before the effective date of the current Copyright Act divested an author of his common law copyright rights and injected the work into the public domain free for anyone to use.").

Defendants correctly observe that Plaintiff in her declaration purports to attest to events related to the issue of the date the Book was created that occurred when she was so young they cannot possibly be within her personal knowledge. Moreover, they have filed objections to her documentary evidence in this regard (Ex. 4 to the Petrella Declaration) based on the fact that it

---

[3] As Defendants themselves admit: "The only question is whether Jake LaMotta's collaborative 'contributions' were sufficient to rise above the 'de minimis' level required under the Copyright Act . . . . However, as LaMotta and Petrella can no longer testify regarding the timing or origin of this work, this issue can never be conclusively resolved." See RSS at No.3.

[4] Although seemingly incongruent on a temporal level, the 1976 Agreement (which was executed/signed by Peter Savage under the pseudonym "Frank Peter Petrillo [sic]") states that both the 1963 and 1973 screenplays were "based on" the "published work . . . entitled 'RAGING BULL' written by Jake LaMotta, Peter Savage and Joseph Carter . . . ." See Exhibit A to Declaration of David Grossman (Docket Item No. 45) at Bates-stamped page MGM00668.

[5] Such is the legacy of the Supreme Court's decision in Stewart v. Abend.

-4-

was not produced during discovery and is hearsay. Nevertheless, based on Defendants'
concession that the Book was published in 1970, there is at least a factual dispute whether the
1963 Screenplay was based on the Book. One can imagine, possibly, an argument for why
Plaintiff should be estopped from asserting that this is the case based upon the representations in
the 1976 Agreement that the Book "is original and has not been copied or adapted from any
literary, dramatic, or other work," but Defendants have not made it. Thus, there is a triable issue.

**B. LaMotta's Transfer of Rights in the Book Precludes a Claim for Copyright
Infringement Only with Respect to Any Protectable Expression That is New to the
Book.**

Assuming that Plaintiff is correct that the Book is a derivative work based upon the 1963
Screenplay, what would be the effect of LaMotta's transfer of his rights in the Book? Defendants
argue that, because the Book is a joint work of authorship, each owner possesses "an undivided
ownership interest in the entire work, including all of the contributions contained therein." 1
Nimmer § 6.03 at 6-7. Thus, they argue, even if the Book was based on the 1963 Screenplay,
and even if the Court or trier of fact were to conclude that the 1963 Screenplay was a work of
sole authorship by Petrella, LaMotta still would have had the right to authorize the use of the
Book. The right of a co-owner to license the use of the copyright being well-established, see,
e.g., Meredith v. Smith, 145 F.2d 620, 621 (9th Cir. 1944), Defendants argue that as a result of
the 1976 Agreement they are LaMotta's licensees. (Whether the 1976 Agreement is treated as a
transfer of LaMotta's interest in the copyright or a grant of non-exclusive license probably does
not matter with respect to Plaintiff's copyright infringement claim). Nimmer observes that "an
authorization to the defendant from one joint owner will be an effective defense to an
infringement action brought by another joint owner." 1 Nimmer §6.10[A] at 6-35. The question
then becomes whether such an authorization will also provide a defense to an action for
infringement of an underlying work created solely by a co-owner. It will not.

17 U.S.C. § 103(b) provides:

> The copyright in a compilation or derivative work extends only to
> the material contributed by the author of such work, as
> distinguished from the preexisting material employed in the work,
> and does not imply any exclusive right in the preexisting material.
> The copyright in such work is independent of, and does not affect
> or enlarge the scope, duration, ownership, or subsistence of, any
> copyright protection in the preexisting material.

Therefore, if the Book is a derivative work of the 1963 Screenplay, Plaintiff still could have a
claim of copyright infringement with respect to any parts of the Book that are also present in the
1963 Screenplay, even though Defendants may have received a valid license from LaMotta.

**C. Defendants Have Not Shown that They Are Entitled to Summary Judgment on
the Issue of Substantial Similarity between the Film and the 1963 Screenplay**

In order to prevail on her claim of copyright infringement, Plaintiff must show that the
Film copied "constituent elements of [the 1963 Screenplay] that are original." Funky Films, Inc.
v. Time Warner Entm't Co., 462 F.3d 1072, 1076 (9th Cir. 2006). In their Separate Statement,

Defendants assert that there are only four supposedly copyrightable elements common to both the Film and the 1963 Screenplay that do not exist in either the Book or the 1973 Screenplay: (1) the use of fight vignettes and vignettes of Jake's personal life; (2) the use of sound of pictures from actual fights; (3) "popping camera flashbulbs;" and (4) the use of the phrase "playing possum." See RSS No. 33. Fairly clearly, none of these elements would provide the basis for a claim of copyright infringement. The only evidentiary support offered for Defendants' assertion, however, consists of Plaintiff's responses to interrogatories in which she identifies numerous supposed similarities between the 1963 Screenplay and Film based upon "sequence of events," theme and tone, characters, and settings. It is not clear how the Court is supposed to determine that all but four of these similarities are present in the other Subject Works.

More generally, Defendants argue that the only similar elements between the 1963 Screenplay and the Film arise from the use of historical acts, biographical details, and scenes-a-faire. While many of the similarities identified by Plaintiff arguably arise from historical events and are not protectable, the issue of substantial similarity in this context is probably not conducive to summary judgment. As Plaintiff notes, the Ninth Circuit has held that if "an indicia of a sufficient disagreement concerning the substantial similarity of the two works" is present "then the case must be presented to the trier of fact." Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004). Moreover, it has been noted that where a high degree of access to the allegedly infringed work is shown, "a lower standard of proof of substantial similarity" is required. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000). The question of when and how the use of biographical details or historical fact in an artistic work can give rise to copyrightable expression is rather more complicated than Defendants would allow. The Court will deny their motion for summary judgment on this point.

It is noted that Plaintiff has also submitted, with her opposition papers, the declaration of Dr. Lew Hunter going to the supposed similarities between the 1963 Screenplay and the Film. Defendants have objected to the Hunter Declaration based on the fact that Plaintiff failed to disclose Hunter's testimony on this point and refused to answer questions at her deposition regarding Hunter's analysis of substantial similarity. Even if this objection were well-taken (as it may be), Defendants have failed to carry their initial burden on this point.

### D. Defendants Are Entitled to Summary Judgment with Respect to their Equitable Defense of Laches

Although laches is an equitable defense, the underlying elements of a laches defense are factual determinations. Defendants have met their burden of showing that there is an absence of disputed issues of fact in this regard. "To establish laches, a defendant must establish (1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004).

"The first element of laches is delay. Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense. [Citations]." Danjaq LLC v. Sony Corp., 263 F.3d 942, 952 (9th Cir. 2001). It is essentially undisputed that Plaintiff had knowledge of the legal theories she is asserting in this action in 1990 or 1991 when she initially retained counsel and filed a renewal application for the 1963

-6-

Screenplay. See RSS Nos. 21 - 22. However, Plaintiff testified that she refrained from filing suit at that time because the Film was not yet profitable. RSS No. 23. (Indeed, it apparently still has not earned a profit). Approximately seven years later, an attorney retained by Plaintiff initiated correspondence with Defendants and Plaintiff again never filed suit at that point - even after being told that Defendants were taking the position that there was no legal basis for any of her claims. RSS Nos. 24-26. "Laches is based on the plaintiff's delay in beginning litigation, not on the information a defendant has regarding a claim." Id. at 953 (quoting Jackson v. Axton, 25 F.3d 884, 889 (9th Cir. 1994). This element of Defendants' laches defense is easily satisfied.

   The next question in assessing Plaintiff's diligence in pursuing the instant litigation is whether her delay was reasonable. In Danjaq, the Ninth Circuit wrote:

>    In determining reasonableness, courts look to the cause of the
>    delay. Delay has been held permissible, among other reasons, when
>    it is necessitated by the exhaustion of remedies through the
>    administrative process, [citation]; when it is "used to evaluate and
>    prepare a complicated claim," [citation]; and when its purpose is
>    "to determine whether the scope of proposed infringement will
>    justify the cost of litigation," [citation]. By contrast, delay is
>    impermissible when its purpose is to capitalize on the value of the
>    alleged infringer's labor, by determining whether the infringing
>    conduct will be profitable. [Citation].

Here, the only justification offered for the delay is that Plaintiff waited to bring suit to assess the Film's profitability. In arguing the appropriateness of her delay in bringing suit, Plaintiff expressly relies upon Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 456 F.Supp. 531, 534 (S.D.N.Y. 1977), in which a district court found that a delay by the composer Scott Joplin's widow's trust in bringing an infringement action was reasonable because his works had "rested in oblivion" until they were essentially rediscovered in the 1970's. Here, even if the Court were to conclude that this holding is not inconsistent with Danjaq (which obviously controls), the situation is not analogous. "Raging Bull" has never rested in oblivion but is considered to be one of (if not the) best motion pictures of the decade of the 1980's. The Court concludes that Plaintiff's delay in bringing suit was unreasonable.

   Finally, Defendants have shown prejudice resulting from the delay. "Courts have recognized two chief forms of prejudice in the laches context - evidentiary and expectations-based." Grand Canyon Trust, 391 F.3d at 987 (quoting Danjaq, 263 F.3d at 955). Defendants assert that they have been prejudiced as a result of Plaintiff's delay in bringing her claims because they have made significant investments in exploiting the film "based on their understanding that [they] were the rightful registrant and owner of the film." MSJ 21:23-25. If Plaintiff were permitted to go forward with her lawsuit, she would potentially be allowed to reap the benefit of these expenditures. As the Ninth Circuit has observed,

>    In the copyright context, the most-repeated justification for the
>    doctrine [of laches] was penned by Judge Learned Hand: "It must
>    be obvious to every one familiar with equitable principles that it is
>    inequitable for the owner of a copyright, with full notice of an
>    intended infringement, to stand inactive while the proposed

> infringer spends large sums of money in its exploitation, and to
> intervene only when his speculation has proved a success. Delay
> under such circumstances allows the owner to speculate without
> risk with the other's money; he cannot possibly lose, and he may
> win. Haas v. Leo Feist, Inc., 234 F. 105, 108 (S.D.N.Y. 1916)."

Danjaq LLC, 263 F.3d at 951. Although Plaintiff speculates that Defendants' conduct would
have been the same whether she had filed suit or not, Defendants undisputably have shown that
they have suffered "expectations-based" prejudice from Plaintiff's delay in bringing suit.

Defendants have also shown evidentiary prejudice resulting from the long delay. They
note that Plaintiff now is attempting to contradict representations by Petrella and LaMotta in the
1976 Agreement that the Book is original and the two Screenplays were based on the Book. At
this time, LaMotta is 88 years old and has suffered myriad blows to his head as a fighter years
ago. Plaintiff has proffered no evidence that LaMotta would be able to testify as to the important
events in this case. Indeed, Plaintiff herself testified that LaMotta no longer recognizes her, even
though he has known her for forty years. Likewise, both Petrella and Joseph Carter, who are
listed in the copyright registration as the authors of the Book, have died. Also deceased are
Petrella's wife and Vickie LaMotta (Jake's then wife depicted in the film). "Evidentiary
prejudice includes . . . witnesses whose memories have faded or who have died." Danjaq LLC,
263 F.3d at 955. Although Plaintiff suggests that there numerous persons still alive who might
be able to testify "on subjects relevant to this case," as observed in Danjaq LLC, "the inquiry is
not whether *some* witnesses might be available - it is whether the absence of *other* witnesses
(who will be absent because of [plaintiff's] delay) will prejudice [the defendant] . . . . That there
are a few survivors to tell part of the story does nothing to erase the prejudice caused by the
unavailability of most of the key players." Id. at 956.

There are strong equitable arguments against allowing this action to proceed. Thus,
Defendants' motion for summary judgment on their laches defense is GRANTED.

### E. Laches Will Bar Not Only Plaintiff's Copyright Infringement Cause of Action but also Her Unjust Enrichment and Accounting Claims

As stated in Boone v. Mechanical Specialties Co., 609 F.3d 956, 958 (9th Cir. 1979),
"Laches is an equitable time limitation on a party's right to bring suit. The doctrine bars an
action where a party's unexcused or unreasonable delay has prejudiced his adversary." The
laches defense rests on the maxim that "one who seeks the help of a court of equity must not
sleep on his rights." See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th
Cir. 2002).

Recovery of an unjust enrichment is an equitable remedy. McKesson HBOC, Inc. v. New
York State Common Ret. Fund, Inc. 339 F.3d 1087, 1093 (9th Cir. 2003); Cruz v. PacifiCare
Health Systems, Inc., 30 Cal.4th 303, 311 (2003). Seeking an accounting (which is not provided
for in a contract) is also an equitable remedy. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478
(1962); First Pac. Holding, Inc. v. Helfer, 224 F.3d 1117, 1126 (9th Cir. 2000).

As noted above, Defendants have established that there are no material issues of fact in
dispute and that Plaintiff's lawsuit is barred by the doctrine of laches. Laches will serve as a
basis for precluding Plaintiff from proceeding on her equitable state claims for unjust enrichment

-8-

and accounting.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED on the basis of their affirmative defense of laches as to all three of Plaintiff's causes of action in her FAC.

The Plaintiff's evidentiary objections are dealt with in a separate Ruling on Plaintiff's Evidentiary Objections and Request to Strike Certain Evidence Submitted by Defendants.

Defendants are to prepare a proposed Judgment to be served on the Plaintiff and lodged with the Court by February 10, 2010.


Dated: This __3rd__ day of February, 2010.


                                        GEORGE H. WU
                                        United States District Judge