1  DAVID GROSSMAN (SBN 211326)
   dgrossman@loeb.com
2  ROBERT J. CATALANO (SBN 240654)
   rcatalano@loeb.com
3  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
4  Los Angeles, California 90067-4120
   Telephone:  310-282-2000
5  Facsimile:  310-282-2200

6  JONATHAN ZAVIN (Admitted *pro hac vice*)
   jzavin@loeb.com
7  LOEB & LOEB LLP
   345 Park Avenue
8  New York, New York  10154
   Telephone:  212-407-4000
9  Facsimile:  212-407-4900

10  Attorneys for Defendants

11                  UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13

14  PAULA PETRELLA, an individual        )   Case No.  CV 09-0072 GW (MANx)

15          Plaintiff,                   )   Assigned to the Hon. George H. Wu

16       v.                             )   **MEMORANDUM OF LAW IN
                                         )   SUPPORT OF DEFENDANTS'
17  METRO-GOLDWYN-MAYER, INC.,           )   MOTION FOR IMPOSITION OF
    a corporation; METRO-GOLDWYN-        )   SANCTIONS AGAINST PLAINTIFF
18  MAYER STUDIOS, INC., a               )   AND HER COUNSEL PURSUANT
    corporation; METRO-GOLDWYN-          )   TO FED. R. CIV. P. 11**
19  MAYER HOME ENTERTAINMENT,            )
    LLC, a limited liability company;    )
20  METRO-GOLDWYN-MAYER HOME             )
    ENTERTAINMENT DISTRIBUTION           )
21  CORPORATION, a corporation;          )
    UNITED ARTISTS CORPORATION, a        )
22  corporation; 20TH CENTURY FOX        )
    HOME ENTERTAINMENT, LLC, a           )
23  limited liability company; and DOES 1 )
    THROUGH 10, inclusive                )
24                                       )
           Defendants.                   )
25                                       )
                                         )
26  ─────────────────────────────────────)

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................ 1

II.    STATEMENT OF FACTS ............................................................... 4

III.   ARGUMENT .................................................................................. 7

    A.     PLAINTIFF'S FRIVOLOUS AND OBJECTIVELY UNREASONABLE CLAIMS WARRANT THE IMPOSITION OF RULE 11 SANCTIONS ....................................... 7

    B.     PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGMENT HAS NO BASIS IN LAW OR FACT ................... 8

        1.     Plaintiff's Copyright Claim Is Baseless As A Matter Of Law Because Plaintiff Failed To Timely Renew The Copyrights In The Book And The 1973 Screenplay And, Therefore, Cannot Prevent Defendants From Continuing To Exploit A Derivative Work Based On Those Literary Works ................. 8

        2.     Defendants Were Given Motion Picture Rights By The Co-Owner Of The Book And, Therefore, The Law Is Clear That Plaintiff Cannot Sue Defendants For Infringement. ........................................................ 11

        3.     The Film And The Literary Works Are Not Substantially Similar. ............................................. 13

    C.     PLAINTIFF'S CLAIMS ARE BARRED BY LACHES .................. 19

        1.     Plaintiff Waited For At Least Ten Years Before Filing The Present Suit. ............................................ 20

        2.     Defendants Will Suffer Expectations-Based Prejudice. .................................................................. 21

    D.     PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS PREEMPTED BY THE COPYRIGHT ACT ................................... 23

    E.     A CO-OWNER CANNOT SUE AN AUTHORIZED LICENSEE FOR AN ACCOUNTING ........................................ 24

IV.    CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Arica Inst., Inc. v. Palmer,
   970 F.2d 1067 (2d Cir. 1992)............................................................... 17

Benay v. Warner Bros. Ent., et al.,
   No. 2:05-CV 08508 PSG (C.D. Cal. 2008) ......................................... 16

Berkic v. Crichton,
   761 F.2d 1289 (9th Cir. 1985) ......................................................... 10, 14

Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.
   498 U.S. 533 (1991)............................................................................. 8

Cano v. A World of Difference Inst.,
   1996 WL 371064 (N.D. Cal. 1996) ..................................................... 15

Cooter & Gell v. Hartmarx Corp.,
   496 U.S. 384 (1990)............................................................................ 7

Danjaq LLC v. Sony Corp., et al.,
   263 F.3d 942 (9th Cir. 2001) ......................................................... 19-21

Davis v. Blige,
   505 F.3d 90 (2d Cir. 2007)........................................................... 13, 25

Del Madera Properties v. Rhodes and Gardner, Inc.,
   820 F.2d 973 (9th Cir. 1987), overruled on other grounds, Fogerty v.
   Fantasy, 510 U.S. 517 (1994) ............................................................. 24

Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,
   140 F.2d 266 (2d Cir. 1944)................................................................ 12

Firoozye v. Earthlink Network,
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) .............................................. 24

Funky Films, Inc. v. Time Warner Entm't Co.,
   462 F.3d 1072 (9th Cir. 2006) ............................................................ 14

Grosso v. Miramax Film Corp.,
   383 F.3d 965 (9th Cir. 2004) .............................................................. 19

1

**Page(s)**

2

3
Hoehling v. Universal City Studios, Inc.,
   618 F.2d 972 (2d Cir. 1980) ............................................................ 15-16

4

5
Hudson v. Moore Business Forms, Inc.,
   836 F.2d 1156 (9th Cir. 1987) ............................................................ 8

6

7
Jackson v. Axton,
   25 F.3d 884, 889 (9th Cir. 1994) ...................................................... 23

8

9
Kepner-Tregoe, Inc. v. Executive Development, Inc.,
   79 F. Supp. 2d 474 (D. N.J. 1999) ................................................... 20

10
Kling v. Hallmark Cards, Inc.,
   225 F.3d 1030 (9th Cir. 2000) .......................................................... 20

11

12
Kodadek v. MTV Networks, Inc.,
   152 F.3d 1209 (9th Cir. 1998) .......................................................... 23

13

14
Kouf v. Walt Disney Pictures and Television,
   16 F.3d 1042 (9th Cir. 1994) ............................................................ 14

15

16
Mappa Music Co. v. Universal-Polygram Int'l Pub.,
   62 U.S.P.Q.2d 1582 (C.D. Cal. 2002) .............................................. 22

17

18
McKay v. Columbia Broad. Sys. Inc.,
   324 F.2d 762 (2d Cir. 1963) ............................................................. 25

19

20
Meredith v. Smith,
   145 F.2d 620 (9th Cir. 1944) ............................................................ 12

21
Metcalf v. Bochco,
   294 F.3d 1069 (9th Cir. 2002) ..................................................... 14, 16

22

23
Metropolitan Life Inc. Co. v. Arthur Taylor,
   481 U.S. 58 (1987) ............................................................................ 23

24

25
Miller Music Corp. v. Charles N. Daniels, Inc.,
   362 U.S. 373 (1960) .......................................................................... 11

26

27
Miller v. Universal City Studios, Inc.,
   650 F.2d 1365 (5th Cir. 1981) .......................................................... 14

28

**Page(s)**

Narell v. Freeman,
     872 F.2d 907 (9th Cir. 1989) .................................................................. 14-16

Novak v. Warner Bros. Pictures LLC, et al.,
     No. 2:07-CV 07-4000 GAF (C.D. Cal. 2008) .................................................. 16

Piantadosi v. Loew's Inc.,
     137 F.2d 534 (9th Cir. 1943) ................................................................ 13, 25

Rosciszewski v. Arete Assocs., Inc.,
     1 F.3d 225 (4th Cir. 1993) ......................................................................... 23

Shaw v. Lindheim,
     919 F.2d 1353 (9th Cir. 1990) .............................................................. 14, 17

Stewart v. Abend,
     495 U.S. 207 (1990) .................................................................... 5, 12, 20

Sybersound Records, Inc. v. UAV Corp.,
     517 F.3d 1137 (9th Cir. 2008) .................................................................. 13

Walker v. Time Life Films, Inc.,
     784 F.2d 44 (2d Cir. 1986) ....................................................................... 10

Warren v. Guelker,
     29 F.3d 1386 (9th Cir. 1994) ...................................................................... 7

Xerox Corp. v. Apple Computer, Inc.,
     734 F. Supp. 1542 (N.D. Cal. 1990) ........................................................... 24

**STATUTES**

17 U.S.C. § 301(a) .......................................................................................... 23

17 U.S.C. §304(a)(4)(A) ................................................................................ 8-9

Copyright Act of 1909 ................................................................................... 11

Federal Rule of Civil Procedure 11(b) ............................................................. 7

Rule 11 of the Federal Rules of Civil Procedure ............................................ 25

LA1888235.2
202822-10081

**Page(s)**

**OTHER AUTHORITIES**

Nimmer, § 6.10[A], 2008 ................................................................. 13

Nimmer, § 6.12[C][3] ..................................................................... 25

Nimmer, § 9.06[F], 2008 .................................................................. 9

# I.    INTRODUCTION

Thirty years after the release of the motion picture "Raging Bull" (the "Film") and approximately twenty years after Plaintiff first engaged legal counsel with respect to these same claims, Plaintiff Paula Petrella has sued Defendants for copyright infringement, unjust enrichment and an accounting with respect to the Film. Plaintiff's father was a co-author, with Jake LaMotta, of certain literary works regarding the life of Jake LaMotta, the world champion boxer who was the subject of the Film. Plaintiff's father, along with LaMotta himself, granted Defendants' predecessor-in-interest motion picture rights in two motion picture screenplays (the "1963 Screenplay" and the "1973 Screenplay") and one jointly-authored book (the "Book") (collectively the "Literary Works") about LaMotta's life and boxing career. In addition to the unjustifiable delay of almost twenty years in bringing these claims, there is no legal or factual basis for any of the claims asserted against Defendants, nor is there a non-frivolous argument for extending or modifying the law to save these claims. All of Plaintiff's claims are barred by well-established and unambiguous law, and Plaintiff and her counsel are, or should be, aware of this. Pursuing these baseless claims is sanctionable.

Plaintiff's copyright infringement claim is both legally and factually baseless for a number of independent reasons. First, Plaintiff's failure to renew the copyright in the Book and the '73 Screenplay prohibits her from claiming that Defendants cannot continue to exploit a derivative work based on them. Because the Literary Works were copyrighted prior to 1978, the Copyright Act provides that the three Literary Works each had an initial copyright term of twenty eight years. If an author dies within the original term of copyright, there is a "renewal term" that vests in the author's heirs. However, if the author's heirs do not timely file a renewal registration within one year of the expiration of the original twenty eight year term, any authorized derivative works created during the initial term may continue to be distributed and the heirs have no rights with respect to such authorized derivative

1 works. Thus, for example, if timely renewal notices are not filed after the expiration

2 of the initial term, a film that is based on a copyrighted book or screenplay continues

3 to be an authorized derivative work and may be distributed throughout the renewal

4 term. In this case, it is undisputed that Plaintiff did not file timely renewal

5 registrations for the 1973 Screenplay or for the Book. Even if the Film is considered

6 to be a derivative work of the Literary Works (and it is not), Defendants retain the

7 right to exploit the Film without any obligation to Plaintiff because no timely

8 renewal registrations were filed with respect to either the Book or the 1973

9 Screenplay. The fact that Plaintiff timely filed a renewal registration for the 1963

10 Screenplay is immaterial because the three Literary Works are virtually

11 indistinguishable from one another and, in fact, Plaintiff has only identified four

12 "elements" from the 1963 Screenplay that were allegedly used in the Film, each of

13 which is undeniably non-protectable. Therefore, by operation of law (law which is

14 clear and unambiguous), Defendants retain all rights to distribute the Film and

15 Plaintiff's belated copyright claim is simply frivolous.

16      Second, Defendants cannot be sued for copyright infringement because Jake

17 LaMotta, as the co-author of the Book which Plaintiff alleges is the basis for the

18 Film, granted Defendants' predecessor-in-interest the right to create a motion

19 picture based on his autobiographical novel. Even assuming, for purposes of this

20 Motion, that the Film is a derivative work of the Book, Defendants were expressly

21 authorized, by LaMotta's grant of rights, to use the Book and clear and

22 unambiguous Ninth Circuit precedent holds that a valid license from a co-author

23 precludes a suit for infringement by another co-author. Therefore, Plaintiff's claims

24 for copyright infringement are legally baseless. There is virtually no difference

25 between the Book and the Screenplays and Plaintiff has not identified any

26 copyrightable material that exists in the Screenplays (but not the Book) that was

27 allegedly used in the Film. In fact, Petrella and LaMotta themselves expressly

28 stated that the two Screenplays were "based on the [Book]." Therefore, the right to

1  use the elements in the Book is the same as receiving the right to use those identical
2  elements from the other Literary Works.  Because LaMotta indisputably granted
3  those rights to Defendants' predecessor, Plaintiff cannot sue Defendants for
4  copyright infringement.  Again, a copyright claim such as this by a co-author against
5  a licensee is frivolous.

6        Third, it is clear from examining the works at issue that there is no substantial
7  similarity of any ***protectable expression*** between the Literary Works and the Film.
8  The only similarities between the works stem from the commonalities that arise
9  from an historical story about the life of legendary boxer, Jake LaMotta – and the
10 facts and circumstances surrounding LaMotta's life are simply not protectable.
11 Without similarity of protectable expression, a copyright claim does not have any
12 legal or factual basis.

13       Finally, Plaintiff's clear, knowing and unreasonable delay in bringing this
14 lawsuit ***18 years after a claim could have been made***, renders this claim barred by
15 the doctrine of laches.  Plaintiff herself has admitted that she engaged counsel nearly
16 twenty years ago with respect to the very same claim that she is asserting in this
17 lawsuit.  Plaintiff has no explanation for this extraordinary delay save for her
18 assertion that, at the time, she did not believe the Film was profitable and, therefore,
19 did elected not to file suit.  The Ninth Circuit has held that where, as here, a plaintiff
20 waits to file suit by "laying in the weeds" until a film has turned a profit, the
21 belatedly filed suit is barred by the doctrine of laches.  In light of Plaintiffs'
22 unreasonable delay, this claim is frivolous.

23       Plaintiff has also alleged state-law claims for "unjust enrichment" and
24 "accounting."  Plaintiff's claim for unjust enrichment fails based on the clear and
25 well-recognized doctrine of copyright preemption.  Innumerable decisions in this
26 circuit have held that claims for unjust enrichment are deemed to be preempted by
27 federal copyright law and, therefore, there is no basis for Plaintiff's unjust
28 enrichment claim.  Plaintiff's "accounting" claim is based on the theory that

LA1888235.2
202822-10081                                        3

1  Defendants and Plaintiff are co-owners of the Book and that Defendants have a duty
2  to "account" to Plaintiff for exploitation of the Film, as a derivative work of the
3  Book.  However, clear Ninth Circuit precedent also bars this claim as a matter of
4  law.  Plaintiff's father and LaMotta are co-authors of the Book and co-authors have
5  a duty to account to one another for proceeds obtained from the exploitation of a
6  joint work.  Defendants have a non-exclusive license to use the Book and are not
7  obligated to provide an accounting to Plaintiff.  If Plaintiff seeks an accounting, she
8  must proceed against the existing co-author of the Book, Jake LaMotta.  In sum,
9  Plaintiff's claims are so without merit that Plaintiff and her counsel should be
10  sanctioned for their continued pursuit of this action.

11  **II.    STATEMENT OF FACTS**

12         In or about 1963, Frank Peter Petrella ("Petrella," and referred to alternatively
13  herein as "Peter Petrella") collaborated with his long-time friend, Jake LaMotta, to
14  write a screenplay about LaMotta's life as a champion boxer (the "1963
15  Screenplay").  See First Amended Complaint ("FAC") at ¶ 14.  Petrella registered a
16  copyright for the 1963 Screenplay with the United States Copyright Office on
17  October 9, 1963.  Id. at ¶ 15.[1]  A few years later, Petrella, along with Jake LaMotta
18  ("LaMotta") and Joseph Carter, authored a book entitled "Raging Bull: My Story"
19  (the "Book") and those three authors jointly registered a copyright for the Book in
20  July 1970.  Id. at ¶¶ 17, 18.  Petrella wrote a second screenplay, based on the 1963
21  Screenplay and the Book in 1973 (the "1973 Screenplay"), and registered a
22  copyright in and to the Screenplay with the Copyright Office in July 1973.  Id. at ¶¶
23  19, 20.

24  _____

25         [1] Even though Petrella registered the copyright for the 1963 Screenplay solely
   in his name, the work itself states that it was written "in collaboration with Jake
26  LaMotta."  Moreover, Plaintiff has conceded, as she must, that the 1963 Screenplay
27  must have been jointly created by LaMotta and Petrella because it describes
   numerous historical incidents and events from LaMotta's life that Petrella was not
28  present for.  Grossman Decl., Ex. B, pp.63-64.

1    Pursuant to a written agreement dated November 19, 1976, Petrella and
2  LaMotta assigned their respective motion picture rights, titles and interests in the
3  1963 Screenplay, the 1973 Screenplay, and the Book to Chartoff-Winkler
4  Productions, Inc. ("CWP") for the purposes of developing a motion picture based on
5  those works.  Id. at ¶¶ 21, 22; Declaration of David Grossman ("Grossman Decl."),
6  Ex. A.  In or about September 1978, United Artists Corporation ("UA") acquired the
7  motion picture rights to "Raging Bull" (the "Film") pursuant to a written assignment
8  from CWP.  Id. at ¶ 24.  UA registered a copyright in and to the Film in or about
9  September 1980.  Id. at ¶ 25.  In November of 1980, UA released the Film starring
10 Robert DeNiro and directed by Martin Scorsese.

11    According to the Complaint, Petrella died in December 1981, during the
12 original 28-year term of the copyrights for the Literary Works.  At the time of his
13 death, Petrella was survived by his wife, his son, and his daughter (Plaintiff).
14 Petrella's renewal rights in the Literary Works passed to these three statutory heirs
15 after the expiration of the original term of each copyright (for example, the 1963
16 Screenplay passed to his heirs in 1991.)  Plaintiff's mother died in 2005 and shortly
17 thereafter, Plaintiff's brother transferred his rights, if any, in the Literary Works to
18 Plaintiff.  Id. at ¶¶ 30-32.  Therefore, Plaintiff alleges that she is now the sole owner
19 of the Petrella interest in the three Literary Works, subject to LaMotta's interests as
20 a joint author.  Id. at ¶¶ 30-32.

21    Plaintiff has worked in the television and motion picture industry in New
22 York and Los Angeles for nearly twenty years.  Grossman Decl., Ex. B, pp. 15-20.
23 In 1990 Plaintiff read about the U.S. Supreme Court decision of Stewart v. Abend
24 (addressing renewal rights of statutory heirs under the Copyright Act) and promptly
25 engaged an entertainment attorney, Lawrence Shire, to assist her in pursuing a
26 copyright infringement claim against Defendants with respect to the Film.  Id., pp.
27 22-23, 27-28.  In 1991, Plaintiff's attorney filed a renewal registration for the 1963
28 Screenplay.  However, Plaintiff did not make any claims against Defendants at that

1  time and, in fact, decided not to pursue litigation at that time because she believed

2  that the Film had not yet made a profit. Id., pp. 29-30.

3      In or around September of 1998, Plaintiff's counsel finally contacted MGM (a

4  fact known by Plaintiff's current counsel) concerning Defendants' exploitation of

5  the Film and the impact of this exploitation on the purported rights and interests of

6  the heirs.  Grossman Decl., Exs. C-F.  At that time, MGM rejected Plaintiff's claim

7  and explained that MGM was granted the right to exploit the Book by LaMotta (and

8  an authorized licensee cannot be sued for copyright infringement – even if only one

9  joint author licensed use of the work.)  Plaintiff was also advised at that time that no

10  protectable elements from the Literary Works were used in the Film.  Id.  Following

11  these communications, Plaintiff went silent and did not take any legal action until

12  2009 – approximately eighteen years after Plaintiff's alleged claim first accrued and

13  eleven years after Defendants expressly rejected it.  Plaintiff was absolutely aware

14  of her claims for all of this time, and yet consciously decided not to file a lawsuit

15  until 2009. Id., Ex. B, pp. 65-67, 75-78.

16      In the interim, Defendants have distributed, and otherwise exploited the Film

17  through various media.  See FAC at ¶¶ 26, 33-39.  Defendants have continued,

18  throughout this time, to expend substantial resources and money on promoting,

19  advertising and distributing the Film.

20      Further, according to Plaintiff's testimony, LaMotta himself is now unlikely

21  to be able to testify.[2]  Grossman Decl., Ex. B, pp. 47, 84-85.  LaMotta is almost 90

22

23      _____

24      [2] Had he been competent to testify, LaMotta could have been a relevant
   witness in this case.  Plaintiff asserts that, unlike the jointly-authored book, the 1963

25  Screenplay was solely authored by her father, Peter Petrella.  However, the 1963
   Screenplay clearly states on its cover page that it was drafted "in collaboration with

26  Jake LaMotta" and it is undisputed that the 1963 Screenplay details the same
   personal events from LaMotta's life that he himself included in his published

27  autobiography.  Finally, to the extent the incidents, dialogue and characters included

28  in the literary works are simply historical facts from LaMotta's life (and therefore

LA1888235.2
202822-10081                              6

1  years old and Plaintiff testified that, although she has met LaMotta hundreds of time

2  in her life, the last time she saw him, he no longer recognized her.  Id.

3       The inexcusable passage of time has impaired Defendants' ability to obtain

4  evidence and has also prejudiced Defendants, who have arranged their business

5  affairs for years by licensing and distributing the Film.

6  **III.   ARGUMENT**

7       **A.     PLAINTIFF'S FRIVOLOUS AND OBJECTIVELY**

8               **UNREASONABLE CLAIMS WARRANT THE IMPOSITION OF**

9               **RULE 11 SANCTIONS.**

10      Sanctions are appropriate in this case because Plaintiff's First Amended

11  Complaint, which is factually baseless and legally meritless, violates Federal Rule

12  of Civil Procedure 11(b) ("Rule 11").  Rule 11 was enacted to deter abuses of the

13  legal process by providing "for the imposition of sanctions when a [pleading] is

14  frivolous, legally unreasonable or brought for improper purpose."  Warren v.

15  Guelker, 29 F.3d 1386, 1388 (9th Cir. 1994); see also Cooter & Gell v. Hartmarx

16  Corp., 496 U.S. 384, 398 (1990) (Rule 11 used to combat "[b]aseless filings [which

17  put] the machinery of justice in motion, burdening courts and individuals alike with

18  needless expense and delay.").

19      Rule 11 provides that:

20          By presenting to the court . . . a pleading, written motion,
            or paper, an attorney or unrepresented party is certifying
21          that to the best of the person's knowledge, information and
            belief, formed after an inquiry reasonable under the
22          circumstances:

23          (1) it is not being presented for any improper purpose,
            such as to harass or to cause unnecessary delay or needless
24          increase in the cost of litigation;

25          (2) the claims, defenses and other legal contentions therein
            are warranted by existing law, or by a nonfrivolous
26

27  ─────────────────────────────────────────

28  are not copyrightable), his testimony on these points would have been relevant and
    potentially dispositive of all of Plaintiff's claims.

1    argument for the extension, modification or reversal of
      existing law or the establishment of new law; [or]
2
      (3) the allegations and other factual contentions have
3     evidentiary support or, if specifically so identified, are
      likely to have evidentiary support after a reasonable
4     opportunity for further investigation or discovery.

5      The certification mandated by Rule 11 creates an affirmative duty on the part

6    of attorneys to verify and investigate both the legal and factual basis for any

7    pleading or paper filed with the court.  See Business Guides, Inc. v. Chromatic

8    Communications Enterprises, Inc. 498 U.S. 533 (1991).  A district court has wide

9    discretion in determining appropriate sanctions for a Rule 11 violation.  Hudson v.

10   Moore Business Forms, Inc., 836 F.2d 1156, 1163 (9th Cir. 1987).

11     Plaintiff's belatedly filed claims copyright infringement, unjust enrichment

12   and accounting are without any basis in fact or law.  By bringing and maintaining

13   this action, Plaintiff and her counsel have acted in an objectively unreasonable

14   manner, entitling Defendants to the imposition of sanctions pursuant to Rule 11.

15   **B.    PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGMENT HAS**

16   **NO BASIS IN LAW OR FACT.**

17   **1.    Plaintiff's Copyright Claim Is Baseless As A Matter Of Law**

18   **Because Plaintiff Failed To Timely Renew The Copyrights In**

19   **The Book And The 1973 Screenplay And, Therefore, Cannot**

20   **Prevent Defendants From Continuing To Exploit A**

21   **Derivative Work Based On Those Literary Works.**

22     The Copyright Act provides that, to prevent continued exploitation of

23   derivative works created during the original copyright term, a renewal claimant must

24   file a renewal application within one year prior to the expiration of the initial 28-

25   year term.  17 U.S.C. §304(a)(4)(A).  The initial 28-year term for the October 1963

26   Screenplay ended in October of 1991.  Plaintiff Paula Petrella timely filed a renewal

27   application in March of 1991, a few months prior to the expiration of the initial 28-

28   year term.  However, with respect to the 1970 Book and the 1973 Screenplay, whose

1   initial 28-year terms expired in 1998 and 2001, respectively, Plaintiff did not file

2   renewal applications until December of 2008.  There is no dispute that these renewal

3   applications were untimely, and the Copyright Act is unambiguous as to the effect

4   of Plaintiff's failure to timely file renewal applications:

5          If an application to register a claim to the renewed and extended term

6          of copyright in a work is not made within 1 year before the expiration

7          of the original term of copyright in a work…then **a derivative work**

8          **prepared under authority of a grant of a transfer or license of the**

9          **copyright that is made before the expiration of the original term of**

10         **copyright may continue to be used** under the terms of the grant

11         during the renewed and extended term of copyright without infringing

12         the copyright…. (emphasis added)

13  17 U.S.C. § 304(a)(4)(A).  In other words, if an author licenses use of his work (for

14  example, a screenplay) and the licensee creates a derivative work (a film) based on

15  that screenplay, unless the author's heirs file a timely renewal notice with regard to

16  the screenplay, the film's creators have the right to continue to distribute the film

17  throughout the renewal copyright term of the screenplay, without any obligation to

18  the author's heirs.  <u>See</u> Nimmer, § 9.06[F], 2008 (noting that "the renewal claimant

19  – usually the widow, widower, or children of the deceased author – must timely file

20  a renewal application for the underlying" pre-1978 work in order to restrict

21  exploitation of the derivative work).  In this case, the failure to timely file renewal

22  applications for the 1970 Book and the 1973 Screenplay precludes Plaintiff from

23  filing a claim for copyright infringement with respect to the Film.  There is no grace

24  period in the statute, nor is the law or its effect unclear in any way.

25         The fact that Plaintiff filed a timely renewal application for the 1963

26  Screenplay is immaterial because the 1963 Screenplay, the 1970 Book and the 1973

27  Screenplay are virtually indistinguishable from one another.  Therefore, the right to

28  use the elements included in the Book and the 1973 Screenplay is the same as to the

LA1888235.2
202822-10081                                     9

1  right to use the identical elements contained in the 1963 Screenplay. Indeed,

2  Plaintiff identifies dozens of allegedly "copyrightable" elements that are included in

3  all three Literary Works. However, there are only four allegedly copyrightable

4  elements common to the Film and the 1963 Screenplay that, according to Plaintiff,

5  do not exist in either the Book or the 1973 Screenplay. Those allegedly

6  copyrightable elements are: "use of fight vignettes and vignettes of Jake's personal

7  life"; "use of sound or pictures from actual fights"; "popping camera flashbulbs";

8  and the fact that a commentator at one of LaMotta's fights said that he was "playing

9  possum."

10      These allegedly common "elements" are not copyrightable by any stretch of

11  the imagination and clearly are insufficient to support a claim for copyright

12  infringement. The use of "fight vignettes" in a film about a boxer is not

13  copyrightable. Further, Plaintiff's second allegedly common element "use of sound

14  and pictures" is incomprehensible when applied to a literary work such as the 1963

15  Screenplay. Obviously there were no sounds or photos in the screenplay itself. The

16  element of "popping camera flashbulbs" is both a historical fact and also flows

17  generically from any description (whether written or visual) of a major sporting

18  event in the 1940's or 1950's. Finally, the fact that LaMotta was described as

19  "playing possum" by a fight commentator is likely nothing more than historical fact.

20  Further, these purported "elements" are simply scenes-a-faire that naturally flow

21  from the idea of a movie about a professional boxer. As such, these concepts are not

22  subject to copyright protection. See e.g. Berkic, infra, 761 F.2d at 1293-94 (denying

23  protection to "familiar scenes and themes [which] are among the very staple of

24  modern American literature and film"); Walker v. Time Life Films, Inc., 784 F.2d

25  44, 50 (2d Cir. 1986) (denying protection to "'stock' themes commonly linked to a

26  particular genre").

27      In sum, these alleged common "elements" are woefully insufficient to support

28  the institution of a claim for copyright infringement. Plaintiff's claim is

1  unambiguously and completely barred by Plaintiff's failure to file timely renewals
2  of the copyright registration in the 1970 book and 1973 screenplay, and her claim to
3  the contrary is frivolous and sanctionable.

4      **2.**    **Defendants Were Given Motion Picture Rights By The Co-**
5          **Owner Of The Book And, Therefore, The Law Is Clear That**
6          **Plaintiff Cannot Sue Defendants For Infringement.**

7      Plaintiff's purported copyright infringement claim also independently fails, as
8  a matter of law, because Plaintiff and Jake LaMotta are co-owners of the Literary
9  Works and LaMotta expressly authorized Defendants to use the Literary Works.[3]
10  Prior to January 1, 1978, U.S. copyright law was governed by the Copyright Act of
11  1909 (the "1909 Act"). The duration of copyright protection under the 1909 Act
12  was for two terms, an original and a renewal term, of 28 years each. Under this two-
13  term system, the author owned the rights to the original term. However, the author
14  would only have rights in the renewal term if he survived until the commencement
15  of the renewal term 28 years later. If the author did not survive until the
16  commencement of the renewal term, then the author's successors, rather than the
17  author's assignee, could claim the rights to the renewal term copyright in the work.
18  See Miller Music Corp. v. Charles N. Daniels, Inc., 362 U.S. 373, 375 (1960).

19  _____

20      [3] Petrella and LaMotta transferred the motion picture rights in the Literary
21  Works to Chartoff-Winkler Productions, Inc., which in turn assigned the rights to
    Defendant United Artists Corporation ("UA"). There is no dispute that the other
22  Defendants in this action derive their rights from and through UA. For purposes of
    this discussion, the term "Defendants" is used to collectively refer to all the
23  defendant entities exercising rights arising from Petrella's and LaMotta's license of
24  the motion picture rights in the Literary Works.
    The Book is clearly registered as a joint work and, although the Screenplays
25  were undoubtedly joint works, this is not material to the analysis. The Book and the
26  Screenplays contain nearly identical expression and Plaintiffs have not identified
    any material, protectable expression that exists in the Screenplays, but not in the
27  Book. Thus, rights to use the Book are equivalent to rights to use the same
28  expression contained in the virtually identical Screenplays.

1    Plaintiff claims that her father, Petrella, failed to survive into the second 28-
2  year term of the copyrights for the Literary Works (which began in 1991), and that,
3  therefore, Petrella's copyright interests in the Literary Works reverted to Petrella's
4  heirs and that Petrella's initial grant of motion picture rights is now void.  <u>See</u>
5  <u>Stewart v. Abend</u>, 495 U.S. 207, 208 (1990).  However, Plaintiff's claim is baseless
6  because **LaMotta** survived into the renewal term of the copyright for the Literary
7  Works, and his grant of rights remains valid regardless of whether or not Petrella's
8  heirs have authorized Defendants to continue to exploit the Literary Works.
9    Petrella (and, by succession, Plaintiff) and LaMotta were co-owners and co-
10 registrants of the copyright in and to the Book.  <u>See e.g.</u> FAC at ¶¶ 17, 18, 32, and
11 41.  And LaMotta granted defendants:

12       all rights of whatsoever kind and nature, under copyright
13       and otherwise, through the universe in and to the [Literary
         Works]...including, without limitation, all motion picture
14       rights...all television motion picture and other television
         rights...the right for the purpose of advertising and
15       exploiting any motion pictures or other versions of the
         [Literary Works] to broadcast and/or transmit by means of
16       television or radio or any process analogous thereto
         whether now known or hereafter devised, excerpts from
17       the [Literary Works] or any adaptation or version thereof,
         including any motion picture or other version or versions
18       thereof...  Grossman Decl., Ex. A.

19    The fact that each co-owner has an independent right to use or license the use
20 of the copyright is well-established.  <u>E.g.</u>, <u>Meredith v. Smith</u>, 145 F.2d 620, 621 (9th
21 Cir. 1944); <u>Edward B. Marks Music Corp. v. Jerry Vogel Music Co.</u>, 140 F.2d 266,
22 268 (2d Cir. 1944).  Defendants acquired the motion picture rights to "Raging Bull"
23 pursuant to a valid assignment from CWP, itself the recipient of a valid assignment
24 by virtue of LaMotta's survival of the renewal term of his own copyright interests.
25    The issue of whether or not the licensee of only one joint author can be held
26 liable for infringement is black-letter copyright law, and has been recently
27 confirmed by both the Ninth and Second Circuits.  These courts have unequivocally
28 held that a grant from one co-author constitutes a non-exclusive license and that,

LA1888235.2
202822-10081                          12

1 even if the other co-author does not consent to that grant of rights, the non-
2 consenting co-author has no rights as against the authorized licensee. See
3 Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1145 (9th Cir. 2008)
4 ("unless all the other co-owners of the copyright joined in granting an exclusive
5 right to Sybersound, TVT, acting solely as a co-owner of the copyright, could grant
6 only a nonexclusive license"); Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007) ("a
7 licensee is not liable to a non-licensing co-owner for use authorized by the license,
8 because the licensee's rights rest on the license conveyed by the licensing co-
9 owner."); see also Nimmer, § 6.10[A], 2008 ("An authorization to the defendant
10 from one joint owner will be an effective defense to an infringement action brought
11 by another joint owner."); see also Piantadosi v. Loew's Inc., 137 F.2d 534, 537 (9th
12 Cir. 1943) (answering in the negative the question of "whether a third party licensed
13 to use a copyrighted work by one co-owner incurs liability for infringing the
14 copyright to other co-owners who gave no consent").

15     LaMotta and Petrella authorized Defendants' predecessor-in-interest to use
16 the protected material (if any) in the Book and, although Plaintiff is now claiming
17 that Defendants do not have a license from Petrella any longer, Petrella's
18 authorization is entirely unnecessary, as a matter of indisputable copyright law,
19 because LaMotta's grant of rights remains valid and is a complete defense to
20 Plaintiff's claim for infringement.  The fact that LaMotta licensed his autobiography
21 (the full title of the Book is "Raging Bull: My Story") to Defendants for use in
22 creation of the Film is a complete defense to an infringement claim from Petrella or
23 his heirs.  As evidenced by Plaintiff's interrogatory responses, there is virtually
24 nothing (whether copyrightable or not) in the Screenplays that was not included in
25 the Book.  Plaintiff's copyright infringement claim, which is clearly contrary to
26 well-established law, is both frivolous and sanctionable.

27     **3.**    **The Film And The Literary Works Are Not Substantially**
28         **Similar.**

1    To prevail on a copyright infringement claim, a plaintiff must demonstrate:

2  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the

3  work that are original." Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d

4  1072, 1076 (9th Cir. 2006).

5    The determination of substantial similarity involves an analysis of the

6  "articulable similarities between the plot, themes, dialogue, mood, setting, pace,

7  characters, and sequence of events" in the two works. Id., Kouf v. Walt Disney

8  Pictures and Television, 16 F.3d 1042, 1045 (9th Cir. 1994). A court "compares,

9  not the basic plot ideas for stories, but the actual concrete elements that make up the

10  total sequence of events and the relationships between the major characters." Berkic

11  v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985). A plaintiff fails to satisfy the

12  extrinsic test if the similarities between the works arise from the use of

13  *unprotectable ideas*. Kouf, 16 F.3d at 1045 (emphasis added).

14    The law clearly provides that similarities arising from historical facts and

15  events, like those asserted by Plaintiff, cannot serve as the basis of a claim for

16  copyright infringement. Narell v. Freeman, 872 F.2d 907, 910-911 (9th Cir. 1989).

17           a.      **The Only Similarities Between The Literary Works**

18                   **And The Film Arise From The Common Use Of**

19                   **Historical Facts.**

20    "It is well settled that copyright protection extends only to an author's

21  *expression* of facts and not to the facts themselves. This dichotomy between facts

22  and their expression derives from the concept of originality which is the premise of

23  copyright law." Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 (5th

24  Cir. 1981) (citations omitted); Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir.

25  1990) ("[c]opyright law protects an author's expression; facts and ideas within a

26  work are not protected"); Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002)

27  ("protectable expression includes the specific details of an author's rendering of

28

1  ideas…"); <u>Cano v. A World of Difference Inst.</u>, 1996 WL 371064 * 8 (N.D. Cal.

2  1996) (describing the "narrow scope of protection afforded a factual work").

3      Importantly, "[h]istorical facts and theories may be copied, as long as the

4  defendant does not 'bodily appropriate' the expression of the plaintiff." <u>Narell,</u> 872

5  F.2d at 910-911 (9th Cir. 1989).  "To avoid a chilling effect on authors who

6  contemplate tackling an historical issue or event, broad latitude must be granted to

7  subsequent authors who make use of historical subject matter, including theories or

8  plots." <u>Hoehling v. Universal City Studios, Inc.</u>, 618 F.2d 972, 978 (2d Cir. 1980).

9  Accordingly, the copyright in non-fiction or biographical works, such as the

10  autobiographical works in this case, is "thin," that is, a court will only find

11  infringement if the accused work is "virtually identical" to the plaintiff's work. <u>See,</u>

12  <u>Id</u>. at 980 ("courts should assure themselves that the works before them are not

13  virtually identical.").  Plaintiff herself has conceded that the Literary Works and the

14  Film are not, in fact, "virtually identical."  Grossman Decl., Ex. B, pp. 45-46.

15      As demonstrated in the interrogatory responses attached to the Grossman

16  Declaration, *every single* purported similarity between the Literary Works and the

17  Film relates solely to the unprotectable report of an historical fact (or constitutes an

18  element that flows naturally from a description of those facts).  Specifically, in her

19  interrogatory responses, when requested to list <u>all</u> similarities between the Literary

20  Works and the Film, Plaintiff listed over sixty such alleged "similarities."  However,

21  these alleged similarities are merely common autobiographical elements and are

22  based on nothing more than the documented historical facts surrounding the life and

23  career of Jake LaMotta.  Plaintiff herself conceded this fact in her deposition.  <u>Id</u>.,

24  Ex. B, pp. 47-56.  Indeed, the Book, co-authored by LaMotta himself, is entitled

25  "My Story," and any alleged facts, incidents or dialogue that purport to be

26  historically accurate constitute unprotectable historical facts and, absent use of some

27  creative, protectable expression, may not form the basis of a suit for copyright

28  infringement.

1       This Court recently addressed a similar issue in the case of <u>Benay v. Warner</u>

2   <u>Bros. Ent., et al.</u>, No. 2:05-CV 08508 PSG (C.D. Cal. 2008).  In <u>Benay</u>, the Court

3   held that the plaintiff's screenplay entitled "The Last Samurai" and the defendants'

4   film entitled "The Last Samurai," which were both about an American war veteran

5   who moves to Japan to train the Japanese Army in Western warfare techniques to

6   help put down the Satsuma (samurai) Rebellion, were not substantially similar.  In

7   reaching this conclusion, the Court noted that "nearly all the similarities between the

8   works arise from non-copyrightable elements, such as historical facts and scenes-a-

9   faire, 'which flow naturally from generic plotlines.'"  Order Granting Summary

10  Judgment, <u>Benay</u>, [Docket No. 176] at * 13 (citing <u>Metcalf</u>, 294 F.3d at 1074).

11      More recently, in <u>Novak v. Warner Bros. Pictures LLC, et al.</u>, No. 2:07-CV

12  07-4000 GAF (C.D. Cal. 2008), this Court again determined that competing

13  depictions of historical events were not substantially similar.  Plaintiffs asserted a

14  claim for copyright infringement of their documentary chronicling the tragic 1970

15  plane crash that befell the Marshall University football team, against the producers

16  of the motion picture "We Are Marshall," which depicted the same events.  This

17  Court granted the defendants' motion for summary judgment, determining that "the

18  only protection available to Plaintiffs lies in their presentation of historical events by

19  which the Court refers to the sequencing, pace, narration, and selection of footage,

20  photographs, events and individuals portrayed – ***but not the events themselves***."

21  Order Granting Summary Judgment, <u>Novak</u>, [Docket No. 53] at *19 (emphasis

22  added).  "Though the two works tell the story of the November 14, 1970 air plane

23  crash, that event, and the events that preceded and followed, are all matters of public

24  record which cannot be copyrighted."  <u>Id.</u> at * 3.

25      Like <u>Benay</u> and <u>Novak</u> (as well as the Ninth Circuit's decision in <u>Narell</u> and

26  the Second Circuit's decision in <u>Hoehling</u>), the only similarities between the

27  Literary Works and the Film are based on the commonalities arising from depicting

28  the key *facts* from the life and career of Jake LaMotta and from scenes-a-faire,

1   which flow naturally from a story about an up-and-coming prizefighter.  There are

2   simply no ***protectable*** similarities between the Literary Works and the Film and, as

3   such, Plaintiff's copyright infringement claim is both frivolous and sanctionable.

**b.      There Is No Substantial Similarity Between Protectable Elements Of The Film And The Literary Works.**

7       Although the Film and the Literary Works depict certain shared ***biographical***

8   ***facts***: the life of boxer Jake LaMotta, his marriage to Vicki, his arrest, and several of

9   his prominent fights, none of these elements are protectable under copyright law.  In

10  fact, an analysis of the substantial similarity factors demonstrates that the works at

11  issue bear little to no similarity in terms of protectable elements of expression.

**(1)      Plot and Sequence of Events.**

13      A work's plot is defined as "the sequence of events by which the author

14  expresses his theme or idea ..."  See Shaw, 919 F.2d at 1363.  To the extent Plaintiff

15  alleges protection in the historical sequencing of a selection of events from

16  LaMotta's life, such a presentation is not protectable.  Arica Inst., Inc. v. Palmer,

17  970 F.2d 1067, 1075 (2d Cir. 1992) ("Since 'the narration of history must proceed

18  chronologically,' this ordering is inevitable and thus is devoid of creativity.  In such

19  circumstances sequence is non-copyrightable....").

20      Plaintiff claims approximately fifteen similarities relating to the "sequence of

21  events" between the Literary Works and the Film.  Grossman Decl., Ex. G.

22  However, these events are all nothing more than historical facts, as documented in

23  LaMotta's autobiography.  These allegedly protectable elements include "Jake

24  meets Vickie and they become a couple"; "Mobsters visit Jake at the gym and also

25  try to influence Pete/Joey to cooperate with the mob" Jake retires from boxing and

26  moves to Miami with Vickie and his children"; and "Jake opens his own nightclub."

27  This "sequence of events" is not protectable because it simply documents a

28  chronological portion of Jake LaMotta's ***actual life*** and boxing career.  These same

LA1888235.2
202822-10081                                              17

1  facts can easily be found in news stories about LaMotta's life.  The sequence of

2  events from a public figure's life does not constitute copyrightable expression and

3  any copyright claim based on such requirement is frivolous.

### (2)    Theme and Tone.

5      Plaintiff claims approximately fourteen similarities in "theme and plot"

6  between the Literary Works and the Film.  These alleged similarities do not include

7  any protectable expression and, instead, include such obviously factual elements as:

8  "Real life boxer who grows up in the Bronx"; "A chronological perspective of

9  Jake's life"; "A fighter who wont [sic] quit"; and "Use of fight vignettes; vignettes

10  of Jake's personal life."  Grossman Decl., Ex. G.

11      These alleged similarities are nothing more than common historical facts

12  included in the Literary Works as well as the Film.  There are no similar ***protectable***

13  elements between the theme and tone of the Literary Works and the Film.

### (3)    Characters.

15      Plaintiff has claimed seven "character" similarities between the Film and the

16  Literary Works.  These purported "similarities" starkly illustrate Plaintiff's lack of

17  concern for the distinction between protectable and unprotectable elements.

18  Plaintiff alleges that the characters are substantially similar for purposes of

19  copyright law because the Film and the Literary Works include the common

20  "characters" of Jake LaMotta, LaMotta's brother, LaMotta's second wife, "various

21  mob characters", "opponents in boxing events" and "unidentified women who Jake

22  is interested in."  Grossman Decl., Ex. G.  Obviously these "similarities" are not

23  protectable and simply are historical figures that played key roles in LaMotta's life.

24  These alleged "character" similarities are unavailing to Plaintiff because the

25  characters themselves constitute historical facts and are therefore not protectable.

### (4)    Settings.

27      Plaintiff alleges that the works are substantially similar because they use the

28  common settings of "Bronx neighborhood," "Jake LaMotta's apartment in the

1   Bronx," "Bronx gymnasium," "Miami home of Jake and Vickie LaMotta" and

2   "fight arenas." Grossman Decl., Ex. G. These "similarities" are merely a function

3   of telling the story of LaMotta's life and constitute unprotectable, historical facts.

4                              **(5)    Dialogue.**

5         Plaintiff has claimed that, in a few instances, the dialogue between the

6   Literary Works and the Film is similar. Grossman Decl., Ex. G. However, these

7   purported similarities are based on LaMotta's life story – which includes dialogue

8   purporting to be factually and historically accurate. Further, the dialogue Plaintiff

9   alleges is common to the Film and the Literary Works involves dialogue that can be

10  found in either the Book or the 1973 Screenplay, which works cannot serve as the

11  basis for a copyright infringement claim for the reasons described above. The sole

12  piece of "dialogue" that is common to the 1963 Screenplay and the Film is the use

13  of the term "playing possum" by a fight commentator. Such language, however,

14  naturally flows from a movie involving boxing/fighting and does not rise to the level

15  of copyrightable expression. See Grosso v. Miramax Film Corp., 383 F.3d 965, 967

16  (9th Cir. 2004) (rejecting a claim of substantial similarity between two competing

17  stories about poker when "the only similarities in dialogue between the two works

18  come from the use of common, unprotectable poker jargon.").

19        In sum, Plaintiff's claims of similarity of protectable expression are so

20  frivolous, and so contrary to well-established law, as to merit sanctions.

21        **C.    PLAINTIFF'S CLAIMS ARE BARRED BY LACHES.**

22        Plaintiff's claims are clearly barred by the doctrine of laches and plaintiff and

23  her counsel have every reason to be aware of this fact. Laches is an affirmative

24  defense that will bar complaints for copyright ownership or infringement. See

25  Danjaq LLC v. Sony Corp., et al., 263 F.3d 942, 947 (9th Cir. 2001). To

26  demonstrate laches, a defendant must prove (1) delay, (2) that the delay was

27  unreasonable and (3) resulting prejudice. Danjaq, 263 F.3d at 950-51. A showing

28  of either of two forms of prejudice will support a finding of laches – evidentiary

1  prejudice or expectations-based prejudice. Danjaq, 263 F.3d at 955-56. Both forms

2  of prejudice are present in this case.

3         **1.    Plaintiff Waited For At Least Ten Years Before Filing The**

4                **Present Suit.**

5         "[D]elay is to be measured from the time that the plaintiff knew or should

6  have known about the potential claim at issue." Kling v. Hallmark Cards, Inc., 225

7  F.3d 1030, 1036 (9th Cir. 2000). In this case, Plaintiff's eighteen-year delay in

8  filing suit over the alleged infringement of the 1963 Screenplay is inexcusable.

9         A delay of nearly *two decades* is deemed to be prejudicial, without the

10  necessity of any showing of either evidentiary or expectations-based prejudice. See

11  e.g. Danjaq, 263 F.3d at 952 ("By any metric, [a] delay [of seventeen to thirty-six

12  years] is more than enough" to support a defense of laches); Kepner-Tregoe, Inc. v.

13  Executive Development, Inc., 79 F. Supp. 2d 474, 489 (D. N.J. 1999) ("Kepner's

14  fourteen-year disregard for its own interests epitomizes the apathy and inattention

15  which laches declines to defend" and noting that other courts have deemed

16  "inexcusable" "delays as short as three and six years in bringing copyright

17  infringement actions…").

18         Further, for nearly two decades, Plaintiff clearly has had actual knowledge of

19  *the very same legal theories that she is asserting in this action*, yet she failed to file

20  suit until 2009. Plaintiff herself engaged counsel in 1990 or 1991, after having read

21  about the Supreme Court's decision in Stewart v. Abend. Grossman Decl., Ex. B,

22  pp. 22-28. Notably, Plaintiff read about this ruling in the Hollywood Reporter and

23  Plaintiff has been working for production companies and major motion picture

24  studios for the last twenty years. Id., pp. 15-20. After hiring counsel in 1990 or

25  1991, Plaintiff filed a renewal application for the 1963 Screenplay, but failed to take

26  any action to enforce her alleged rights. Plaintiff testified that she declined to file

27  suit because she understood that the Film was not profitable at that point in time. Id.

28

1    Approximately seven years later, in or around September of 1998, an attorney

2 representing the Petrella family initiated correspondence with Defendants

3 concerning Plaintiff's alleged rights with respect to the 1963 Screenplay. Grossman

4 Decl., Exs. C-F. At that time, Plaintiff's counsel specifically noted that the rights

5 being asserted by Petrella's heirs arose from the 1991 renewal copyright filed by

6 Plaintiff and made threats of imminent litigation. In response, the Petrella family

7 was told that there were no similarities between the Screenplays and the Film and

8 was also informed that there was no basis for any claims against Defendants because

9 Jake LaMotta's grant of rights remained valid and gave the Defendants the right to

10 continue exploiting the Film.

11    Even if the Court were to ignore the first seven years of delay (between 1991

12 and 1998), Plaintiff's further delay of nearly *eleven years*, during which time

13 Defendants openly benefited from the exploitation of the Film, is unreasonable.

14        **2.        Defendants Will Suffer Expectations-Based Prejudice.**

15    A demonstration of expectations-based prejudice requires a showing that

16 defendant "took actions or suffered consequences that it would not have, had the

17 plaintiff brought suit promptly." Danjaq, 263 F.3d at 955.

18    Such expectations-based prejudice is plainly evident here. As is clear from

19 the Complaint, since 1980, various of the Defendants have arranged their affairs,

20 invested in, licensed, and otherwise exploited the Film, all based on their

21 understanding that Defendants were the rightful registrant and owner of the

22 copyrights in the Film. See FAC at ¶¶ 24-27. Defendants have invested in the Film

23 by converting it to various formats, including VHS, DVD and Blu-Ray, and

24 Defendants have entered into numerous agreements to license the Film for

25 continued distribution and publication over the course of the last two decades as

26 well as in the future. Defendants have openly and notoriously exploited the Film

27 and have spent millions on marketing, advertising and other exploitation of the Film

28 over the course of the last decade.

1    Moreover, Plaintiff's selection of the Defendants in this action is further
2  evidence of the expectations-based prejudice and the financial harm suffered as a
3  result of Plaintiff's indefensible delay in pursuing her alleged rights.  Defendant
4  Twentieth Century Fox Home Entertainment LLC ("Fox") was named as a
5  defendant for "distribut[ing] and/or assist[ing the MGM/UA defendants]" in the
6  distribution of the Film.  FAC, ¶11.  Fox is a third party business partner of the
7  MGM/US defendants and has no actual or alleged ownership interest in the Film
8  and/or the Literary Works, and Plaintiff's claim against it arises *solely* out of the fact
9  that Fox has exploited the Film with the express authorization of the other
10 defendants.  Plaintiff's decision to name Fox not only interferes with the legitimate
11 third party business activities and relationships of the other defendants, it exposes
12 those parties to additional financial exposure by way of attorneys' fees and costs
13 associated with the defense of Fox.  This exposure has been exacerbated by
14 Plaintiff's decision to serve Fox with numerous irrelevant discovery requests and to
15 notice the depositions of Fox witnesses.

16    A change in the authorship and copyright ownership status of the Film at this
17 late stage would obviously have a dramatically prejudicial impact upon Defendants
18 and their business relationships, particularly as Defendants continue today to exploit
19 their rights in the Film in various media.  Jackson v. Axton, 25 F.3d 884, 889 (9th
20 Cir. 1994) (prejudice found where defendant "arranged his business affairs around
21 the Song, promoted the Song as his own, licensed the Song many times to third
22 parties, and sold the Song"); Mappa Music Co. v. Universal-Polygram Int'l Pub., 62
23 U.S.P.Q.2d 1582, 1587 (C.D. Cal. 2002) (expectations-based prejudice found where
24 defendants and third parties engaged in numerous and recent business dealings
25 involving the song).  The Ninth Circuit has also held that a presumption of prejudice
26 arises from delay, especially delay without good cause, as is the case here.  Jackson,
27 25 F.3d at 889 (dismissing case for co-authorship and accounting brought *sixteen*
28 *years* after the claim was known to the plaintiff).

1   Because Plaintiff unreasonably delayed in bringing this suit, and Defendants

2   would manifestly suffer expectations-based prejudice by the untimely alteration of

3   copyright ownership Plaintiff seeks by her Complaint, Plaintiff's Complaint is

4   barred by the doctrine of laches.[4]  Further, Plaintiff's delay was so deliberate and

5   calculating, and the law is so clear, that pursuing the point now is sanctionable.

6   ### D.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS

7   ### PREEMPTED BY THE COPYRIGHT ACT.

8   Plaintiff's unjust enrichment claim is without basis in law or fact.  The law is

9   clear that an unjust enrichment claim premised on a theory of alleged

10  misappropriation of a copyrightable work is preempted because it seeks recovery for

11  purported rights that are equivalent to rights protected by the Copyright Act.

12  "Congress may so completely preempt a particular area, that any civil

13  complaint raising this select group of claims is necessarily federal in character."

14  Metropolitan Life Inc. Co. v. Arthur Taylor, 481 U.S. 58, 63-64 (1987).  Copyright

15  is one such area of "complete preemption."  Rosciszewski v. Arete Assocs., Inc., 1

16  F.3d 225, 232 (4th Cir. 1993); see 17 U.S.C. § 301(a).  There is a two-part test that

17  courts apply to determine whether a state-law claim is preempted by the Copyright

18  Act.  A state-law claim is preempted if it seeks to protect "rights that are equivalent

19  to" those protected by the Copyright Act, and involves a work within the "subject

20  matter of copyright."  Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th

21  Cir. 1998) (quoting, inter alia, 17 U.S.C. § 301(a)).

22

23

---

24   [4] Defendants have also suffered "evidentiary prejudice" based on the decades-
25  long delay in filing suit.  Per Plaintiff's testimony, LaMotta is likely no longer
    competent to testify.  Therefore, Defendants may be unable to elicit testimony from
26  LaMotta regarding whether or not the facts that are included in the Literary Works
    and the Film are simply historical events from his life.  LaMotta's testimony would
27  also be relevant to the issue of whether or not he contributed substantial elements to
28  the 1963 Screenplay, which Plaintiff alleges was solely authored by her father.

1    Pursuant to this test, any state law cause of action premised on an

2  unauthorized "use or copy[ing of] materials within the subject matter of copyright is

3  equivalent to the protection provided by section 106 of the Copyright Act" and thus

4  is preempted. <u>Del Madera Properties v. Rhodes</u>, 820 F.2d 973, 977 (9th Cir. 1987),

5  <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy</u>, 510 U.S. 517, 533 (1994).

6    Plaintiff's second claim for relief is "completely" preempted by the Copyright

7  Act because, by seeking to recover as a "co-owner" for Defendants' allegedly

8  unauthorized use, distribution and exploitation of VHS cassettes, DVDs, etc., this

9  claim seeks to vindicate the same rights that are equivalent to those protected by the

10  Copyright Act. <u>See</u> FAC, ¶¶ 56, 57. It is firmly established that the Copyright Act

11  preempts state law claims for unjust enrichment, as such claims merely duplicate –

12  in the language of "quasi contract" or "unearned benefits" – rights protected by

13  copyright. <u>Del Madera Properties</u>, 820 F.2d at 977; <u>Xerox Corp. v. Apple</u>

14  <u>Computer, Inc.</u>, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990). Nor can plaintiff

15  salvage this purported cause of action by characterizing it as one for an "implied in

16  law contract" or "restitution based on quasi-contract." <u>See</u> <u>Firoozye v. Earthlink</u>

17  <u>Network</u>, 153 F. Supp.2d 1115, 1126 (N.D. Cal. 2001). Thus, Plaintiff's unjust

18  enrichment claim is preempted. Further, because the law in this area is settled and

19  indisputable, pursuing a claim for unjust enrichment by is baseless and sanctionable.

20  **E.    A CO-OWNER CANNOT SUE AN AUTHORIZED LICENSEE**

21  **FOR AN ACCOUNTING.**

22    Plaintiff's claim for "accounting" is entirely without merit because

23  Defendants are authorized to exploit the Film (through the grant of motion picture

24  rights given to Defendants' predecessor-in-interest) by Jake LaMotta. Plaintiff's

25  claim, if any, lies against the co-owner granting the rights in the underlying works,

26  not against a licensed third party. Plaintiff's father and LaMotta were co-owners of

27  the copyrights in the Literary Works and they jointly granted Defendants'

28  predecessor-in-interest the right to create a motion picture based on those works. "A

1  licensee is not liable to a non-licensing co-owner for use authorized by the license,

2  because the licensee's rights rest on the license conveyed by the licensing co-

3  owner." Davis, 505 F.3d 90, 100 (citing McKay v. Columbia Broad. Sys. Inc., 324

4  F.2d 762, 763 (2d Cir. 1963)). "Likewise, a licensee need not pay any royalties or

5  other consideration to the co-owners who are not parties to the license agreement."

6  Id. (citing Piantadosi, 137 F.2d at 537, for the proposition that "a third party granted

7  a non-exclusive copyright license by one co-owner [has] no duty to the other co-

8  owner."). This concept is explained in further detail in Nimmer, § 6.12[C][3]:

9         Suppose, for example, that A and B are joint authors of a

10        novel. They both join in a transfer of exclusive motion
       picture rights in the novel to C. Under the concept of

11        copyright divisibility adopted in the current Copyright Act
       C is not a joint owner of 'the copyright' in the

12        [underlying] work…instead, he is the sole owner of
       motion picture rights, while A and B remain joint owners

13        of the book publication rights, the legitimate stage rights,
       etc. Since C is not a joint owner with A and B, he need

14        not account to them for any proceeds he may receive from
       the further exploitation of motion picture rights.

15     Plaintiff may not state a claim for accounting against Defendants because

16 Plaintiff and LaMotta remain joint owners of the underlying rights to the Book (and

17 the other Literary Works) and any "accounting" remedy relating to the exploitation

18 of those works must be asserted against LaMotta, and not against a licensed third

19 party. Plaintiff's pursuit of this obviously frivolous claim is sanctionable.

20 **IV.    CONCLUSION**

21     For all of the foregoing reasons, Defendants respectfully submit that Plaintiff

22 and Plaintiff's counsel be sanctioned pursuant to Rule 11 of the Federal Rules of

23 Civil Procedure.

24 Dated: August 25, 2009            LOEB & LOEB LLP

25                           JONATHAN ZAVIN
                          DAVID GROSSMAN

26                           ROBERT J. CATALANO

27                           By:

28                           David Grossman
                          Attorneys for Defendants

**PROOF OF SERVICE**

1

2        I, Valent Manssourian, the undersigned, declare that:

3        I am employed in the County of Los Angeles, State of California, over the age

4   of 18, and not a party to this cause.  My business address is 10100 Santa Monica

5   Boulevard, Suite 2200, Los Angeles, California 90067-4120.

6        On August 25, 2009, I caused a true copy of the foregoing

7   **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
    **MOTION FOR IMPOSITION OF SANCTIONS AGAINST PLAINTIFF**
8   **AND HER COUNSEL PURSUANT TO FED. R. CIV. P. 11;**

9   **DECLARATION OF DAVID GROSSMAN IN SUPPORT OF**
    **DEFENDANTS' MOTION FOR IMPOSITION OF SANCTIONS**
10  **AGAINST PLAINTIFF AND HER COUNSEL PURSUANT TO FED. R.**
    **CIV. P. 11**

11
    on the parties in this cause as follows:
12
    Glen Kulik, Esq.
13  Alisa S. Edelson, Esq.
    KULIK, GOTTESMAN, MOUTON & SIEGEL, LLP
14  15303 Ventura Boulevard, Suite 1400
    Sherman Oaks, CA  91403
15  Telephone:  (310) 557-9200
    Facsimile:  (310) 557-0224
16  Email:  gkulik@kgmslaw.com
    Email:  aedelson@kgmslaw.com
17

18       I am readily familiar with Loeb & Loeb LLP's practice for collecting and

19  processing correspondence for mailing with the United States Postal Service and

20  Overnight Delivery Service. That practice includes the deposit of all correspondence

21  with the United States Postal Service and/or Overnight Delivery Service the same

22  day it is collected and processed.

23       I certify that I am employed in the office of a member of the bar of this court

24  at whose direction the service was made.

25       I declare under penalty of perjury that the foregoing is true and correct.

26       Executed on August 25, 2009, at Los Angeles, California.

27                                    *Valent Manss*
                                      Valent Manssourian
28

Proof of Service
Case No. CV09-0072 GW (MANx)