DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Telephone:  310-282-2000
Facsimile:  310-282-2200

JONATHAN ZAVIN
(Admitted Pro Hac Vice)
jzavin@loeb.com
LOEB & LOEB LLP
345 Park Avenue
New York, New York  10154-1895
Telephone:  212-407-4000
Facsimile:  212-407-4990

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA PETRELLA, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>METRO-GOLDWYN-MAYER, INC., a corporation; METRO-GOLDWYN-MAYER STUDIOS, INC., a corporation; METRO-GOLDWYN-MAYER HOME ENTERTAINMENT, LLC, a limited liability company; METRO-GOLDWYN-MAYER HOME ENTERTAINMENT DISTRIBUTION CORPORATION, a corporation; UNITED ARTISTS CORPORATION, a corporation; 20TH CENTURY FOX HOME ENTERTAINMENT, LLC, a limited liability company; and DOES 1 THROUGH 10, inclusive,<br><br>　　　　Defendants. | Case No.  CV 09-0072 GW (MANx)<br><br>Assigned to Hon. George H. Wu<br><br>**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities; Declarations of David Grossman and Mark Rose; [Proposed] Judgment filed concurrently herewith]<br><br>Date: April 20, 2015<br>Time: 8:30 a.m.<br>Courtroom: 10 |

1   Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Central

2   District Local Rule 56-1, defendants METRO-GOLDWYN-MAYER INC.

3   (erroneously sued as "METRO-GOLDWYN-MAYER, INC."), METRO-

4   GOLDWYN-MAYER STUDIOS INC. (erroneously sued as "METRO-

5   GOLDWYN-MAYER STUDIOS, INC."), METRO-GOLDWYN-MAYER HOME

6   ENTERTAINMENT LLC (erroneously sued as "METRO-GOLDWYN-MAYER

7   HOME ENTERTAINMENT, LLC"), MGM HOME ENTERTAINMENT

8   DISTRIBUTION CORP. (erroneously sued as "METRO-GOLDWYN-MAYER

9   HOME ENTERTAINMENT DISTRIBUTION CORPORATION") (the first four

10  defendants are collectively referred to as "MGM"), UNITED ARTISTS

11  CORPORATION, TWENTIETH CENTURY FOX HOME ENTERTAINMENT

12  LLC (erroneously sued as "20TH CENTURY FOX HOME ENTERTAINMENT,

13  LLC") (collectively with MGM, "Defendants") submit this Separate Statement of

14  Uncontroverted Facts and Conclusions of Law in support of their concurrently filed

15  Motion for Summary Judgment.

16                          **UNCONTROVERTED FACTS**

17

| **Uncontroverted Material Fact:** | **Supporting Evidence:** |
|---|---|
| 1.   After Jake LaMotta retired from boxing, he collaborated with his long-time friend, Frank Peter Petrella ("Petrella") to write a book about LaMotta's life as a champion boxer (the "Book"). | First Amended Complaint ("FAC") ¶ 17 [Docket No. 28]; Declaration of David Grossman ("Grossman Decl."), Ex. A. |
| 2.   Frank Peter Petrella ("Petrella") and Jake LaMotta jointly registered a copyright for the Book in July 1970, at the time the Book was published. | FAC ¶¶ 17, 18; Grossman Decl., Ex. B. |
| 3.   Petrella and LaMotta collaborated on the writing of a screenplay based on LaMotta's life story in | Grossman Decl., Ex. C. |

| | | |
|---|---|---|
| | 1963 (the "1963 Screenplay"). | |
| 4. | Petrella registered a copyright for the 1963 Screenplay with the United States Copyright Office on October 9, 1963. | FAC at ¶ 16; Grossman Decl., Ex. D. |
| 5. | Petrella wrote a second screenplay, also based on the Book, in 1973 (the "1973 Screenplay") and registered a copyright in and to the 1973 Screenplay with the Copyright Office in July 1973. | FAC at ¶¶ 19, 20. |
| 6. | Pursuant to a written agreement dated November 19, 1976 (the "1976 Agreement"), Petrella and LaMotta assigned their respective motion picture rights, titles, and interests in the Book, the 1963 Screenplay and the 1973 Screenplay to Chartoff-Winkler Productions, Inc. ("Chartoff") for the purposes of developing a motion picture based on those works. | Id. at ¶¶ 21, 22; Grossman Decl., Ex. E. |
| 7. | LaMotta (and Petrella), pursuant to the 1976 Agreement, granted to Chartoff "all rights of whatsoever kind and nature, under copyright and otherwise, throughout the universe in and to the [Literary Works]…including, without limitation, all motion picture rights…all television motion picture and other television rights…the right for the purpose of advertising and exploiting any motion pictures or other versions of the [Literary Works] to broadcast and/or transmit by means of television or radio or any | Grossman Decl., Ex. E at its pp. 2-3. |

STATEMENT OF
UNCONTROVERTED FACTS

| | | |
|---|---|---|
| | process analogous thereto whether now known or hereafter devised, excerpts from the [Literary Works] or any adaptation or version thereof, including any motion picture or other version or versions thereof…" | |
| 8. | In the 1976 Agreement, LaMotta and Petrella "represent[ed] and warrant[ed] that . . . the [Book] is original and has not been copied or adapted from any literary, dramatic or other work…" | Id., at its p. 18. |
| 9. | In the 1976 Agreement, LaMotta and Petrella "represent[ed] and warrant[ed] that . . . [the 1963 and 1973 Screenplays] are original and have not been copied or adapted from any literary, dramatic or other work other than the [Book] . . ." | Id. |
| 10. | The 1976 Agreement begins: "This is to confirm the terms of the Agreement between you (. . . 'Owner') and us (. . . 'Purchaser'') regarding the acquisition by Purchaser of all the motion picture and certain allied rights in and to that certain literary material in the form of a published work [the Book] entitled 'RAGING BULL' . . ., and in and to those certain screenplays based on the said work which were written in 1963 and 1973 . . ." | Id., at its p. 1. |
| 11. | The 1976 Agreement provides, that, "[a]s full consideration for the rights granted to [Chartoff] hereunder and for Owner's representations, warranties and | Id., at its p. 9; Grossman Decl., Ex. K. |

| | | |
|---|---|---|
| | indemnities hereunder, Purchaser agrees to pay to Owner" *inter alia*, $200,000. | |
| 12. | The 1976 Agreement provides, *inter alia*, that "[i]n respect of the first feature-length motion picture, if any, based upon the Property and produced in the exercise of the Rights hereunder, Owner shall be entitled to receive as additional consideration a sum equal to five percent (5%) of 100% of the net profits derived from such motion picture . . ." | <u>Id.</u>, at its p. 10. |
| 13. | In or about September 1978, United Artists Corporation ("UA") acquired the motion picture rights to "Raging Bull" (the "Film") pursuant to a written assignment from Chartoff. | FAC at ¶ 24; Grossman Decl., Ex. F. |
| 14. | UA registered a copyright in and to the Film in or about September 1980. | FAC at ¶ 25. |
| 15. | In November 1980, UA released the Film starring Robert DeNiro and directed by Martin Scorsese. | Grossman Decl., Ex. G. |
| 16. | Petrella died in December 1981, during the original 28-year term of the copyrights for the Literary Works. | FAC at ¶ 28. |
| 17. | At the time of his death, Petrella was survived by his wife, his son, and his daughter (Plaintiff). | <u>Id.</u> |
| 18. | Petrella's renewal rights in the Literary Works passed to his three statutory heirs – his wife, son, and daughter – after the expiration of the original term of each copyright. | <u>Id.</u> at ¶ 29. |
| 19. | Plaintiff alleges that she is now the | <u>Id.</u> at ¶ 32. |

STATEMENT OF
UNCONTROVERTED FACTS

| | | |
|---|---|---|
| | sole owner of the Petrella interest in the three Literary Works, subject to LaMotta's interest as a joint author. | |
| 20. | Plaintiff has succeeded to her father's contractual interest and is demanding benefits, as her father's successor to her father's rights, under the 1976 agreement. | Grossman Decl., Ex. H; Declaration of Paula Petrella in Opposition to Defendant's Motion for Summary Judgment [Lodged on October 8, 2009] [Dkt. Nos. 51, 61] at ¶ 18. |
| 21. | Although they all involve the life and career of Jake LaMotta, the Literary Works and the Film are not "virtually identical." | Grossman Decl., Ex. I, pp. 45-46. |
| 22. | At deposition, Plaintiff testified that she had no reason to believe purported similarities between the 1963 Screenplay and the Film identified in her responses to discovery, such as "Opponents in boxing events, including Robinson, Kochan, Janeiro, Fox, Cerdan, Dautheille" and "Real-life boxer who grows up in the Bronx and comes from a poor Italian family" were not based on historical fact. | Grossman Decl., Ex. I, pp. 47-56. |
| 23. | In response to Special Interrogatory No. 1, which asks Plaintiff to "[d]escribe in detail all alleged similarities between THE 1963 SCREENPLAY and THE FILM" Plaintiff identifies the following: "(a) Many of the characters and their roles within the drama are substantially similar as follows: (i) Jake La Motta; (ii) Vickie La Motta; (iii) Pete/Joey (Jake's good friend/brother who acts as a sparring partner and/or | Grossman Decl., Ex. J. |

trainer/manager); (iv) Various mob characters including Salvy; (v) Opponents in boxing events including Robinson, Kochan, Janeiro, Fox, Cerdan, Dautheille. These fights are depicted in substantially the same order; (vi) Announcer/proprietor at Bronx nightclub who introduces Jake La Motta to the customers; (vii) Unidentified women who Jake is interested in;

(b) The type and sequence of events are also substantially similar as described below: (i) Jake demands Pete/Joey character hit him in the face. (ii) Pete/Joey is Jake's sparring partner who eventually quits. (iii) Jake meets Vickie and they become a couple. (iv) Mobsters visit Jake at the gym and also try to influence Pete/Joey character that Jake needs to cooperate with the mob. (v) Vickie is unhappy with her relationship with Jake. She confides in Pete/Joey and tells him she is bored and feels trapped. Both works also imply Vickie may be romantically involved with someone in the mob. Pete/Joey beats Salvy up because of Vickie. (vi) Jake's weight is an issue for the Janeiro fight. Pete/Joey discusses this fight with Jake. (vii) Jake throws the fight against Fox, but won't go down. He is accused of throwing the fight and eventually suspended from boxing. After, newspapers with headlines regarding the fight are

thrown about and Jake is distraught. (viii) Pete/Joey watches Jake fight Robinson on television. (ix) Jake beats Cerdan and wins the title and cries. (x) Jake retires from boxing and moves to Miami with Vickie and his children. (xi) Jake opens his own nightclub. (xii) Vickie catches Jake at the nightclub with women and tells him she is leaving him. (xiii) Jake is arrested and charged with serving alcohol to a minor and prostituting a minor. When Jake is arrested at his nightclub, one of the arresting officers tells Jake he does not know the reason why. (xiv) Jake is convicted and sent to prison where he is resigned and defeated. (xv) After his release from prison, Jake entertains audiences in small and pathetic venues.

(c) The themes and plot in both works are substantially similar as described below: (i) Real life boxer who grows up in the Bronx and comes from a poor Italian family. (ii) Boxer wants to do things his own way - in life, in relationships, in boxing and without the mob's help. He is an egotistical and jealous person. (iii) Boxer has tumultuous relationships with his family and brother/close friend. He beats his wife and brother/close friend. (iv) Physically fights in his career and personal relationships. (v) Boxer's jealousy and obsession with wife. (vi) A chronological perspective

STATEMENT OF
UNCONTROVERTED FACTS

of Jake's life. (vii) A fighter who won't quit --- he will do everything to stand up in the ring and not let anyone knock him out no matter how many hits he takes. (viii) A person who feels like he - should be punished and accepts his punishment for things he has done. For instance, he accepts his punishment physically by letting others hit him. (ix) A washed up boxer who tries performing because he needs some kind of a comeback. (x) Boxer who struggles with his weight. (xi) Use of newspaper and press photo montages. (xii) Use of fight vignettes; vignettes of Jake's personal life. (xiii) Use of sound or picture footage from actual fights. (xiv) Popping camera flashbulbs.

(d) The settings in the Film and 1963 Screenplay are substantially similar as described below: (i) Bronx neighborhood; (ii) Jake La Motta's apartment in the Bronx; (iii) Bronx gymnasium; (iv) Bronx nightclubs; (v) Miami, Florida home of Jake and Vickie La Motta; (vi) Fight arenas including Detroit Stadium and Madison Square Garden; (vii) Florida prison; (viii) Jake La Motta's nightclub in Miami, Florida; (ix) Small entertainment venues in New York City where Jake La Motta performs.

(e) The mood and pace are substantially similar. Both works are dramatic, physically and

STATEMENT OF
UNCONTROVERTED FACTS

emotionally violent, fast paced, dark, and action laden.

(f) The Screenplay and Film share the title 'Raging Bull.'

(g) The Screenplay and Film contain substantially similar dialogue: (i) Screenplay - Jake asks Pete 'hit me on the jaw ... What are you, afraid?' Pete responds 'What the hell did that prove?' Film - Jake asks Pete 'hit me in the face... What are you, afraid?' Pete responds 'What does it prove?' (ii) Screenplay - Pete asks Vickie why she tried to cheat on Jake. She explains 'We never go anyplace... I'm young... I have to be in bed by 10 every night... He never even makes love to me... I'm just sick of it!' Pete tells her Jake has a 'burning drive to be champion,' and it'll be better when Jake quits fighting. She says, 'He'll never get the championship, never!.., he won't listen to anyone.' Film - Vickie La Motta explains to Joey about why she is socializing with mobsters. 'I feel like I'm a prisoner... I look at somebody the wrong way, I get smacked... I'm 20 years old, I gotta go home and sleep by myself every night... this guy don't even wanna f*** me anymore,' Joey tells her Jake will be better when he gets his shot at the title. She says, 'Jake is never gonna be champ - too many people hate him.' (iii) Screenplay - Emcee at a nightclub announces Jake who stands and nods: '...that

| | |
|---|---|
| rough, tough fighting middleweight known as the 'Bronx Bull' - JAKE LA MOTTA.'  Film - Emcee at the Copacabana nightclub announces Jake who stands and nods: '...The world's leading middleweight contender – the Bronx Bull, the Raging Bull, let's hear it for the great JAKE LA MOTTA, Ladies and Gentlemen!' (iv) Screenplay/Film - Commentator for Dautheuille fight remarks that Jake is 'playing possum.' (v) Screenplay - Regarding the prostitution charges, Jake La Motta tells Pete that 'I introduce thousands of people to other people. It's part of my function - I am the host.' Film - Regarding the prostitution charges, Jake La Motta tells detective that 'I introduce a lot of people to a lot of people. (Gesturing toward one officer) I introduced him to men, but I don't say nothing.' (vi) Screenplay- Jake remarking on his appeal for the prostitution charges: 'for 10 thousand, they guarantee I'll win my appeal.' Film – Jake remarking on his appeal for the prostitution charges: 'My lawyer says if I could spread ten thousand around, I can get the case dropped.'" | |
| 24.   The purported similarities between the 1963 Screenplay and the Film identified by Plaintiff's purported expert, Richard Walter, are largely identical to those identified by Plaintiff in her responses to | Declaration of Mark Rose ("Rose Decl.) ¶¶ 103, 105-137. |

| | | |
|---|---|---|
| 1 | discovery. | |
| 2 | 25. The 1963 Screenplay opens with a central incident in that work – LaMotta's violent robbery of a local bookie named Harry the Book. LaMotta leaves Harry for dead, believing that he killed him in the attack. As a young adult, LaMotta is also asked to go on criminal errands with Peter Petrella, and he violently beats those who stand in his path. LaMotta is nervous about his perceived murder of Harry the Book, but he is not charged for that attack and, instead, he is questioned by the police and imprisoned for a different crime, attempting to rob a jewelry store. LaMotta is sentenced to 1-3 years in the State Reform School in Coxsackie, New York. While at Coxsackie, LaMotta initially acts tough, and the warden punishes him and assigns him to work on a road gang. LaMotta meets a friend named Rocky on the road gang, and Rocky introduces LaMotta to Father Joseph. LaMotta attempts to escape the prison, and when he is caught he is put in solitary confinement for a month. Father Joseph visits LaMotta in his cell, talks to him about Jesus, and gains LaMotta's trust. Father Joseph gets LaMotta a job in the prison gym, where LaMotta starts practicing boxing. LaMotta gets into the ring with the (prison) "champ" and is beaten soundly. This loss inspires | Grossman Decl., Ex. C (The 1963 Screenplay), pp. 1-34. |

| | | | |
|---|---|---|---|
| | | LaMotta to improve his skills and he trains diligently.  In a re-match with the same fighter, LaMotta knocks him out in one round. | |
| | 26. | At the beginning of the second act of the 1963 Screenplay, LaMotta is released from prison and he meets with Peter Petrella, who arrives in a car with two pretty girls.  Petrella insinuates that he has been working for the mob.  LaMotta tells Petrella that he does not want to break the law, and that he is going to try to become a boxer.  Petrella agrees to join him and they train together and begin fighting on the local circuit.  LaMotta and Petrella get into a fight at a bar, and someone shoots Petrella in the arm, forcing him to give up boxing.  Shortly thereafter, LaMotta finds out that Petrella was sentenced to 5-15 years in prison.  Years later, Petrella is released from prison and meets LaMotta at the boxing gym, where LaMotta introduces Petrella to his wife Vikki, and LaMotta tells Petrella that he now has two children. | Grossman Decl., Ex. C (The 1963 Screenplay), pp. 35-72. |
| | 27. | Peter Petrella is not a character in the Film. | Grossman Decl., Ex. G (the Film). |
| | 28. | In the 1963 Screenplay, LaMotta tells Petrella that he wants to do things "on his own" and that is why he has not yet been given a title shot.  Vikki tells Petrella that LaMotta has not received a title shot because "he won't play ball" with the right people.  A local gangster named Salvy tricks | Grossman Decl., Ex C (The 1963 Screenplay), pp. 54-73. |

| | | |
|---|---|---|
| | Petrella into going on a double-date with Vikki – and when Petrella finds out that his would-be date is his friend's wife, he beats up Salvy.  Gangsters also harass LaMotta while he is training at the gym.  Petrella tells LaMotta that, if he takes a dive in his upcoming fight against Tony Janiro, he will receive $100,000 and a title shot.  LaMotta refuses the offer, and beats Janiro.  While LaMotta is training for his fight against Billy Fox, Petrella tells him the same offer is available.  LaMotta ruptures his spleen while in training and realizes that, if he fights hurt, he'll lose, and thereby end up with a title shot even though he won't have thrown the fight intentionally. | |
| 29. | In the 1963 Screenplay, after losing the Fox fight, LaMotta gets his title shot, beats Marcel Cerdan for the title, and holds a party where he meets with Harry the Book, who LaMotta is shocked and overjoyed to see alive.  LaMotta returns to the Bronx to a parade and then fights Tiberio Mitri, the European champion.  LaMotta is growing tired of fighting, and of constantly struggling to lose enough weight to make the weigh-in.  Plaintiff's Screenplay describes LaMotta's famed last-minute comeback against Laurent Dauthuille as well LaMotta's loss of the title to his long-time rival, Sugar Ray Robinson. | Grossman Decl., Ex. C (The 1963 Screenplay), pp. 73-89. |

STATEMENT OF
UNCONTROVERTED FACTS

| | | |
|---|---|---|
| 30. | The final third of Plaintiff's Screenplay covers LaMotta's move to Miami. LaMotta buys a night club, stays out for nights at a time, and becomes an alcoholic. Vikki demands a divorce and LaMotta is arrested and incarcerated for "compulsory prostitution" – for introducing underage girls to men at his bar. LaMotta is told that he can pay a $10,000 bribe to get out of the charge, but he refuses to pay it, believing he will be vindicated by the justice system. LaMotta attempts to reconcile with Vikki, but she treats him coldly. LaMotta is convicted but, before he begins his sentence, he gets an acting job doing summer theater in Pennsylvania. When LaMotta returns to Miami, he is again rebuffed by Vikki and he goes out barhopping and meets a new love, Sallye. Sallye takes care of LaMotta and attempts to wean him away from his self-destructive conduct. When LaMotta goes to prison for the prostitution charge, Sallye visits him numerous times out of sympathy and genuine concern, while Vikki only visits him in order to get money out of him. While in prison, LaMotta fakes an injury to avoid doing hard time, and when he is found out, he is placed in solitary confinement. He yells "How much lower than this?" when placed in his cell. Sallye picks LaMotta up from prison when he is released, and | Grossman Decl., Ex. C (The 1963 Screenplay), pp. 90-125. |

LA2416310.1
202822-10081

STATEMENT OF
UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | LaMotta tries to mount a boxing comeback in Miami, but later decides to start acting and taking more theater roles. | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | 31. | The final few pages of Plaintiff's Screenplay briefly describe LaMotta's testimony before the Kefauver Committee on organized crime, and LaMotta's admission, in his testimony, that he took a dive in the Billy Fox fight. In retirement, LaMotta enjoys life with his new love, Sallye, and in the concluding scene, Petrella tells LaMotta and Sallye that he has formed a production company and is going to start shooting a movie in Italy with LaMotta in the lead. | Grossman Decl., Ex. C (the 1963 Screenplay), pp. 126-130. |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23 | 32. | The Film does not move strictly in chronological order. It begins in 1964, years after LaMotta has retired. LaMotta is prepping for his show "An Evening With Jake LaMotta" and he is reciting a verse he's created. The Film then flashes back to 1941 to LaMotta's fight with Jimmy Reeves. The controversial decision in favor of Reeves sparks a semi-riot in the auditorium, and LaMotta refuses to leave the ring first, on the grounds that the (true) winner of the fight should always leave second. | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 30. |
| 24<br>25<br>26<br>27<br>28 | 33. | The Film depicts LaMotta's violent and disrespectful relationship with his first wife, Irma. His brother, Joey LaMotta, is depicted as a more rational confidante. Joey is LaMotta's sparring partner, he is also his | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 31. |

STATEMENT OF
UNCONTROVERTED FACTS

| | | |
|---|---|---|
| 1<br>2 | | manager, and Joey is responsible for organizing LaMotta's fights. | |
| 3<br>4<br>5<br>6<br>7<br>8 | 34. | In the Film, the mobster Salvy repeatedly prevails upon Joey to convince his brother to go along with the mob's agenda.  Joey introduces LaMotta to a fifteen-year old beauty (Vikki) at the local swimming pool.  Even though he is married, LaMotta is immediately interested in Vikki and starts a relationship with her. | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 31. |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 35. | The Film depicts two of LaMotta's fights with Sugar Ray Robinson, the second of which LaMotta loses.  LaMotta believes that the second fight was fixed because Robinson was leaving boxing temporarily to join the Army.  LaMotta wins many more fights, but is consistently jealous of Vikki, and he blows up at her when she mentions that his upcoming opponent, Tony Janiro, is "good looking."  LaMotta wins the fight, and in doing so, he delivers a series of vicious punches to Janiro's face while Vikki is watching from the crowd. The damage done to Janiro prompts the mob boss Tommy Como, watching from the crowd, to utter one of the Film's famous lines: "he ain't pretty no more." While Joey is at a nightclub, he sees Vikki talking to Salvy.  Joey tells her to stay away from Salvy and Salvy and Joey exchange words.  Joey attacks Salvy outside the club, and beats him badly. The mob boss, Tommy Como, | Grossman Decl., Ex. G; Rose Decl., ¶ 32 |

| | | |
|---|---|---|
| | tells Joey he has to apologize to Salvy. | |
| 36. | In his fixed fight against Billy Fox, LaMotta is depicted as playing defense, and he does not even bother to mount an attack against Fox.  Unlike the 1963 Screenplay, there is no mention of LaMotta having a ruptured spleen and therefore losing "legitimately."  LaMotta is suspended from fighting on suspicion of throwing the fight. | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 33. |
| 37. | LaMotta is able to secure a title fight as a result of throwing the Fox fight, and he beats Marcel Cerdan to become middleweight champion.  Several years later, LaMotta asks Joey if he fought with Salvy because of Vikki, and LaMotta asks Joey if he had an affair with Vikki.  Joey refuses to answer and decides to leave. LaMotta confronts Vikki, who sarcastically retorts that she slept with the entire neighborhood. LaMotta then runs to Joey's house to attack him. | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 34. |
| 38. | After LaMotta defends his title against Laurent Dauthuille, he calls his brother Joey, but chooses not to say anything when his brother answers, and LaMotta hangs up the phone without identifying himself.  LaMotta is depressed and eventually loses to Sugar Ray Robinson in their final encounter.  Bloodied and swollen at the end of the fight, LaMotta confronts Robinson with the taunt "You never got me down, Ray." | Grossman Decl., Ex. G (the Film). |

| | | |
|---|---|---|
| 39. | A few years later at a press conference, LaMotta announces his retirement.  He moves to Florida and buys a nightclub. After staying out all night at his club, Vikki confronts him and tells him that she wants a divorce – and that she has been planning to divorce since his retirement. LaMotta is arrested for introducing underage girls to men at his club, and he serves a jail sentence in Florida.  LaMotta believes that if he pays a $10,000 bribe, his conviction will be overturned.  In order to raise the money to pay the bribe, LaMotta removes the jewels from his championship belt and tries to pawn them.  Depicted as desperate and pathetic, he is unable to raise the money, and serves his sentence.  In his jail cell, LaMotta punches the walls with his bare hands, and cries. | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 36. |
| 40. | When LaMotta is released and returns to New York, he sees Joey and they awkwardly hug.  The Film ends with LaMotta as a pathetic stand-up comic in a New York dive and then finally with a coda in which he practices the famous Brando monologue from *On the Waterfront*: "I could've had class.  I could've been a contender.  I could've been somebody, instead of a bum, which is what I am." | Grossman Decl., Ex. G (the Film); Rose Decl., ¶¶ 37, 38. |
| 41. | The entire plot and sequence of events included in the first third of the 1963 Screenplay, including the | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 29 |

| | | |
|---|---|---|
| | characters, settings and incidents, is absent from the Film. | |
| 42. | In the Film, the courtship between LaMotta and Vikki is not included in the 1963 Screenplay. | Grossman Decl., Ex. G (the Film); Rose Decl., ¶ 128. |
| 43. | In the 1963 Screenplay, Vikki is portrayed in a negative light, as manipulative and money hungry, but she is not portrayed that way in the Film. | Grossman Decl., Ex. C (the 1963 Screenplay), *passim*; Rose Decl., ¶¶ 43, 48. |
| 44. | In the Film LaMotta, as opposed to the 1963 Screenplay, LaMotta accepts mob money without any reference to a legitimate injury and LaMotta, in real life, testified before a Congressional committee that he took a dive in the Fox fight in exchange for a title shot. | Grossman Decl., Ex. G (the Film); Rose Decl., Ex. D. |
| 45. | The declaration of Plaintiff's expert, Richard Walter, states: "My strong view is that the screenplay and the book are virtually identical to one another . . ." | Rose Decl., Ex. A at its p. 5. |

## CONCLUSIONS OF LAW

| **Undisputed Conclusion of Law:** | **Supporting Law:** |
|---|---|
| **Plaintiff's Copyright Claim Is Barred By the** **Doctrine of Estoppel By Contract** | |
| 1. Estoppel by contract provides that the parties to a contract and their successors are estopped to deny the truth of the recitals in that contract. | *First Fed. Trust Co. v. Stockfleth*, 98 Cal.App. 21, 27 (1929); 13 Witkin Sum. Cal. Law Equity § 193(c); Evidence Code § 622. |
| 2. Evidence contesting the recitals made by original contracting parties is inadmissible to alter the | *Plaza Freeway v. First Mt. Bank*, 81 Cal.App.4th 616, 626 (2000). |

| | | |
|---|---|---|
| | terms of the written agreement. | |
| | **Plaintiff's Copyright Claim Is Barred By the Doctrine of Equitable Estoppel** | |
| 3. | Estoppel will apply as a matter of equity when a party (a) makes a representation of material facts; (b) with knowledge of the facts; (c) to a party ignorant of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was induced to act on it. | 13 Witkin Sum. Cal. Law Equity § 191; *Domrad v. Fisher & Burke, Inc.*, 270 Cal. App. 2d 543, 555 (Cal. App. 1st Dist. 1969). |
| | **The 1963 Screenplay and the Film Are Not Substantially Similar** | |
| 4. | To prevail on a copyright infringement claim, a plaintiff must demonstrate: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. | Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1076 (9th Cir. 2006). |
| 5. | The determination of substantial similarity involves an analysis of the articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of two works. | Id.; Kouf v. Walt Disney Pictures and Television, 16 F.3d 1042, 1045 (9th Cir. 1994). |
| 6. | Copyright protection extends only to an author's expression of facts, and not to the facts themselves. | Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 (5th Cir. 1981); Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990); Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002). |
| 7. | Historical facts are not copyrightable. | Narell v. Freeman, 872 F.2d 907, 910-11 (9th Cir. 1989); Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 629 (9th Cir. 2010). |

1    Dated:  March 16, 2015                LOEB & LOEB LLP
                                           DAVID GROSSMAN
2                                          ROBERT J. CATALANO

3                                          By:/s/ David Grossman
                                              David Grossman
4                                             Attorneys for Defendants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT OF
UNCONTROVERTED FACTS